BEN P. FYKE & SONS v GUNTER COMPANY

OPINION OF THE COURT

1. PLEADING—AMENDMENT—COURT RULES—PREJUDICE.

A court rule provides that leave to amend pleadings shall be freely given when justice so requires; the Michigan Supreme Court has acknowledged the Federal source of that rule and has been guided by the Federal precedents; the Michigan rule, as the Federal rule, is designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result (GCR 1963, 118.1).

2. PLEADING—AMENDMENT—UNDUE DELAY—BAD FAITH—DILATORY MOTIVE—PREJUDICE—FUTILITY OF AMENDMENT.

A motion to amend pleadings ordinarily should be granted, and denied only for particularized reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment; the leave sought should, as the rule requires, be "freely given" (GCR 1963, 118.1).

3. PLEADING—AMENDMENT—DISCRETION—FINDINGS.

To safeguard and implement the policy favoring the amendment of pleadings, the Michigan Supreme Court has directed that upon denial of motion to amend such exercise of discretion should be supported by specific findings as to *reasons* for the same.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 8, 13, 14, 15, 20] 61 Am Jur 2d, Pleading § 305 *et seq.*
[3] 61 Am Jur 2d, Pleading § 309.
[5, 6] 61 Am Jur 2d, Pleading §§ 308–313.
[7, 22] 18 Am Jur 2d, Corporations § 174.
[9, 18, 19, 21, 23] 61 Am Jur 2d, Pleading §§ 125–168.
[10] 61 Am Jur 2d, Pleading § 363.
[11] 61 Am Jur 2d, Pleading §§ 133–155.
[12, 16] 61 Am Jur 2d, Pleading §§ 152–160.
[17] 61 Am Jur 2d, Pleading § 295.

4. PLEADING—AMENDMENT—PREJUDICE—WORDS AND PHRASES—RE-
SULT OF TRIAL—COURT RULES.

The possible impact of allowance of an amendment to pleadings
on the outcome of a case is not the kind of prejudice contem-
plated in the court rule providing for amendments to pleadings;
the word "prejudice" refers to matter which would prevent a
party from having a fair trial, or matter which he could not
properly contest, *e.g.,* when surprised; the possible prejudice
must stem from the fact that the new allegations are offered
*late* rather than in the original pleading, and not from the fact
that the opponent may lose his case on the merits if the
amendment is allowed, whereas he may win it if the amend-
ment is denied (GCR 1963, 118).

5. PLEADING—AMENDMENT—DISCRETION—LIMITATION—COURT RULES.

The discretion confided to trial judges under the court rule
standard that "leave [to amend pleadings] shall be freely given
when justice so requires" is not boundless; this language im-
poses a limitation on the discretion of the court necessitating a
finding that justice would not be served by the amendment
(GCR 1963, 118.1).

6. PLEADING—AMENDMENT—DISCRETION—CLAIMS—DEFENSES—COURT
RULES.

A trial judge abuses the discretion confided to him under the
court rule standard that leave to amend pleadings shall be
freely given when justice so requires when he utilizes it to
obviate a recognized claim or defense (GCR 1963, 118.1).

7. ACTIONS—CLAIMS—DEFENSES—CORPORATIONS—ANNUAL REPORT—
FRANCHISE FEE—STATUTES—LEGISLATIVE POLICY—SUPREME
COURT.

The substantive basis of all claims and defenses, "favored" and
"disfavored" alike, are acts of the Legislature and the common-
law decisions of the Michigan Supreme Court or other appel-
late Courts; the Legislature concluded that stringent measures
were necessary to bring about compliance with the annual
report and franchise fee requirements for corporations, which
has now been repealed, and the Michigan Supreme Court has
steadily enforced that legislative policy (MCLA 450.87).

8. PLEADING—AMENDMENT—LITIGANT'S RIGHT—UNDUE DELAY—BAD
FAITH—DILATORY MOTIVE—PREJUDICE—FUTILITY OF AMEND-
MENT—STATUTES—COMMON LAW—COURT RULES.

The allowance of an amendment to a pleading is not an act of
grace, but a right of a litigant seeking to amend in the absence

of any apparent or declared reason such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, futility of amendment, etc.; an individual judge may not properly substitute his personal view of justice and sound public policy for the statutory, or common-law or court rule meant to apply.

9. PLEADING—AMENDMENT—DEFENSES—LIMITATION OF ACTIONS.

A statute of limitations defense can be raised by amendment to pleadings like any other matter.

10. PLEADING—AMENDMENT—DISPOSITION OF CASE—ISSUES—FACTS—LAW.

The allowance of the probable disposition of a case to be a factor in deciding whether to permit an amendment to pleadings would deny the parties a full hearing on all the issues, facts and law, and inevitably would produce decisions based on scanty records composed of pleadings and moving papers and possibly oral argument.

11. PLEADING—AMENDMENT—MERITS OF CLAIM—MERITS OF DEFENSE—FUTILITY OF AMENDMENT.

A court, on a motion to amend pleadings, should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face and it would be futile to allow the amendment.

12. PLEADING—AMENDMENT—TARDY AMENDMENT—EXPENSE TO OPPOSITE PARTY—AFFIRMATIVE DEFENSE—DISCOVERY—INTERROGATORIES.

No prejudice in terms of unnecessary expense was caused to a plaintiff by defendant's three-month delay in seeking to amend its answer to a complaint to allege an affirmative defense where the only pretrial discovery was defendant's submission and plaintiff's response to interrogatories and the focus of the interrogatories was directly related to, indeed the basis of, defendant's amendment.

13. PLEADING—AMENDMENT—CLAIM—DEFENSE—STATUTES—RULE OF LAW.

A judge may not properly avoid grappling with the nettlesome problem of applying facts to law by creating a special rule for a case where the claim or defense is raised by amendment when confronted with an imploring factual situation and a statute or rule of law which would appear to require a result contrary to his sense of the reason or justice of the situation.

14. Pleading—Amendment—Delay—Prejudice—Witnesses—Evidence—Expense—Trial.

Delay by a moving party in offering an amendment to pleadings can be a major source of prejudice to the opposing party because witnesses may die, evidentiary material may be lost or destroyed, unnecessary expense may be incurred during the pretrial proceedings, and the litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial.

15. Pleading—Amendment—Delay—Bad Faith—Prejudice—Burden of Proof.

Mere delay in the absence of a showing of either bad faith or actual prejudice does not warrant denial of a motion to amend pleadings, though generally the risk of substantial prejudice increases with the passage of time; all amendments have in common that they are offered *later in time* than the pleading they seek to amend.

16. Pleading—Contracts—Amendment—Delay—Corporations—Annual Report—Franchise Fees—Affirmative Defense—Interrogatories.

Defendant's failure in a suit seeking payment for services rendered under an agreement to raise the defense in its initial answer that the plaintiff corporation had been in default in filing its annual report and paying franchise fees when it was aware at about the time of filing the answer or shortly thereafter the corporation had been in default did not constitute bad faith and justify denial of an amendment setting up such an affirmative defense, where defendant asserted it did not have sufficient information to determine if the contract had been entered into while the plaintiff was in default until it reviewed plaintiff's answer to interrogatories and the good faith of defendant's assertion is attested by its service of the interrogatories within eight days of its answer.

17. Pleading—More Definite Statement—Discovery—Court Rules.

A court rule allows a party to move for a more definite statement before filing its responsive pleading if the opponent's pleading is so vague or ambiguous that it fails to comply with the requirements of the rules; other information regarding an adversary's claim or defense is to be obtained through discovery (GCR 1963, 115.1).

18. PLEADING—COMPLAINT—MORE DEFINITE STATEMENT—AMENDMENT
—ANSWER—DISCOVERY.

Plaintiff's complaint properly set forth sufficient facts to state "his cause of action" and "to inform the adverse party of the nature of the cause he is called upon to defend"; in this context, where the judge might properly have refused to grant a motion for a more definite statement, the defendant's failure to make such a motion does not justify a refusal to allow an amendment to defendant's answer based on information obtained through discovery (GCR 1963, 111.1).

19. PLEADING—ANSWER—AMENDMENT—AFFIRMATIVE DEFENSES.

Affirmative defenses, even if not asserted in the initial answer, may be introduced by amendment; the consequence of a failure to include an affirmative defense in an answer is that testimony in support of the defense may be rejected *unless* the defect in the pleadings is cured by amendment.

DISSENTING OPINION

T. E. BRENNAN and M. S. COLEMAN, JJ.

20. PLEADING—AMENDMENT—COURT RULES.

*A court rule provides that leave to amend pleadings should be freely granted "when justice so requires"; as a general proposition the effect of the amendment on the final outcome of the case, that is, the merits of the amendment are not usually to be considered by the trial judge in determining whether "justice requires" that leave to amend be granted (GCR 1963, 118.1).*

21. PLEADING—ANSWER—AMENDMENT.

*The mere fact that an amendment to a defendant's answer would provide a complete defense to the plaintiff's claim should not be ground for refusing leave to amend but, the nature of the defense may be considered by the trial court in evaluating the lateness of the proferred amendment.*

22. CORPORATIONS—ANNUAL REPORTS—FRANCHISE FEES—STATUTES—
FORFEITURE—TAXATION— EQUITY—DISCRETION.

*The defense of lack of capacity permitted by a statute providing that a corporation shall not maintain any action while in default in filing its annual reports or in paying the required franchise fees is more accurately a civil forfeiture, designed to enforce compliance with the filing requirements of the corporation laws and, to the extent that it enures to the benefit of individuals, it is no more than a bounty, offered by state government as a device to insure collection of corporate fran-*

chise taxes; although the law permits such forfeitures, equity abhors them and the trial judge ought not to be required to close his eyes to the impact of the exercise of his discretion (MCLA 450.87).

23. PLEADING—ANSWER—AMENDMENT—DISCRETION—CORPORATIONS—
    ANNUAL REPORT—FRANCHISE FEES—CONTRACTS—INTERROGATO-
    RIES.

The circuit judge when called upon to exercise his discretion in refusing to allow defendant's belated amendment to its answer, to raise a defense that the plaintiff corporation lacked the capacity to maintain the action because the agreement between them was entered into and the work performed while plaintiff was in default for failure to file its annual report and pay franchise fees properly considered that the contract was admitted by defendant, because it follows that defendant's officers and agents were fully aware of the agreement, the date of the agreement was equally within the knowledge of the parties and there was no need for interrogatories to determine whether the contract was made within the period of plaintiff's corporate default.

Appeal from Court of Appeals, Division 2, Bronson, P. J., and Danhof and Van Valkenburg, JJ., affirming Oakland, William P. Hampton, J. Submitted October 2, 1973. (No. 5 October Term 1973, Docket No. 54,414.) Decided December 18, 1973.

43 Mich App 144 reversed.

Complaint by Ben P. Fyke & Sons, Inc., against The Gunter Company seeking payment for services rendered under an agreement. Defendant's motion to amend its answer to include an affirmative defense denied. Defendant appealed to the Court of Appeals on leave granted. Affirmed. Defendant appeals. Reversed and remanded for further proceedings.

*Hyman & Rice* (by *David F. Simon*), for plaintiff.

*Allan G. Greenberg*, for defendant.

LEVIN, J. The Court of Appeals held that the trial judge was justified in denying the motion of the defendant, The Gunter Company, to amend its answer to set up an affirmative defense based on plaintiff Ben P. Fyke & Sons, Inc.'s failure to file an annual report and pay franchise fees. We reverse.

Fyke is seeking payment for services rendered under an agreement with Gunter. Gunter's answer admits that Fyke performed its obligations under the agreement. Gunter also admitted that it had failed and refused to pay the invoices submitted by Fyke.

Three months after filing its answer, Gunter sought to amend to allege as an affirmative defense under now repealed MCLA 450.87; MSA 21.87[1] that Fyke lacked the capacity to maintain this action because the agreement was entered into and the work performed while Fyke was in default for failure to file its annual report and pay franchise fees.

During oral argument on the motion, Fyke's counsel attributed the greater than six-months lapse in filing the annual report and paying franchise fees to the distraught frame of mind of the person entrusted with the task whose husband was suffering from a serious illness.

The judge, after noting that the services had been performed and finding Fyke's non-filing "justifiable", denied Gunter's motion. Responding to GCR 1963, 118.1's standard that "leave [to amend] shall be freely given when justice so requires", the judge stated that to permit the amendment, which would possibly allow Gunter to escape a potential liability in excess of $21,000, would constitute a "mockery of justice".

---

[1] MCLA 450.87; MSA 21.87 was repealed by 1972 PA 284, which became effective January 1, 1973. MCLA 450.2098; MSA 21.200(1098).

Gunter sought and was granted leave to appeal. The Court of Appeals, in upholding the denial of the proposed amendment, said that a trial judge may properly "evaluate the merits of the parties' respective claims" when deciding whether to permit an amendment.

We granted further leave to consider whether the "merits" of a claim or defense a party seeks to raise by amendment may properly be considered in deciding whether to allow the amendment.

I

We have acknowledged the Federal source of Rule 118 and have been guided by the Federal precedents. *LaBar v Cooper,* 376 Mich 401, 405; 137 NW2d 136 (1965).

Our rule, as the Federal rule, is "designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result". *United States v Hougham,* 364 US 310, 316; 81 S Ct 13, 18; 5 L Ed 2d 8, 14 (1960). A motion to amend ordinarily should be granted, and denied only for particularized reasons:

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v Davis,* 371 US 178, 182; 83 S Ct 227, 230; 9 L Ed 2d 222, 226 (1962).

To safeguard and implement the policy favoring amendment, this Court has directed that upon denial of a motion to amend "such exercise of discretion should be supported by specific findings

as to *reasons* for the same". *LaBar v Cooper,
supra,* p 409. (Emphasis supplied.)

## II

Underlying the trial judge's denial of Gunter's
motion to amend and the Court of Appeals' affirm-
ance was the stated concern that allowance of the
amendment would cause Fyke to lose its otherwise
meritorious claim and thereby "prejudice" it.

The possible impact of allowance of an amend-
ment on the outcome of a case is not the kind of
prejudice contemplated by Rule 118.1. The Com-
mittee Comment accompanying Rule 118 spells out
the particular meaning of the word "prejudice" in
this context:

" 'Prejudice' refers to matter which would prevent a
party from having a fair trial, or matter which he could
not properly contest, e.g. when surprised. *It does not
refer to the effect on the result of the trial otherwise."*
(Emphasis supplied.)

A number of courts have held that although
allowance of the proffered amendment may cause
the opposing party ultimately to lose on the merits
this is not a factor to be considered in deciding
whether to grant the motion.[2] "[T]he question of
prejudice is presented by the *time* at which it is

---

[2] "In a sense the plaintiff, indeed, is prejudiced by the amendment
by reason of the fact that if it be allowed, he must be prepared to
meet it upon the trial, and if defendant should establish it to the
satisfaction of the trier of fact, it will deprive plaintiff of success in
his action. However, this advantage to the defendant and disadvan-
tage to the plaintiff is not sufficient to justify a denial of defendant's
application." *Nebbia v Nebbia,* 111 NYS2d 813, 816 (Sup Ct Monroe
Co, 1952).

*Similarly, see Schwartz v American Stores Co,* 22 FRD 38 (ED Pa,
1958); *Brink v Central School District No 1,* 63 Misc 2d 293; 311
NYS2d 424, 426 (Sup Ct, Trial and Spec Term, Dutchess Co, 1970);
*Iacono v New York,* 136 NYS2d 767, 770 (Sup Ct, Trial Term, Kings
Co, 1954).

offered rather than by the substance of what is
offered. The possible prejudice, in other words,
must stem from the fact that the new allegations
are offered *late* rather than in the original plead-
ing, and not from the fact that the opponent may
lose his case on the merits if the amendment is
allowed, whereas he may win it if the amendment
is denied." James, Civil Procedure, § 5.2, p 158
(emphasis by the author).

Apart from the immaterial "prejudice" of ulti-
mately losing its case, neither Fyke in argument
nor the trial judge in his findings mentioned any
other source of prejudice.

## III

Fyke contends that in "the furtherance of jus-
tice" a judge may properly consider the resulting
equities of the proffered amendment. This is much
like the contention, just discussed, that the merito-
riousness of the claim or defense may be consid-
ered in deciding whether its allowance would be
"prejudicial".

Fyke argues that the annual report defense is,
or ought to be, "disfavored" and that a judge may
properly disallow a disfavored claim or defense
offered by amendment.

The discretion confided to trial judges under the
standard, "leave shall be freely given when justice
so requires", is not boundless. In *Burg v B & B
Enterprises,* 2 Mich App 496, 500; 140 NW2d 788
(1966), Judge (now Justice) T. G. Kavanagh wrote,
"[W]e believe that [this] language * * * imposes a
limitation on the discretion of the court necessitat-
ing a finding that justice would not be served by
the amendment."[3]

---

[3] *Similarly,* the Kentucky Court of Appeals in *Ashland Oil &*

While admittedly the parameters of the judge's discretion are incapable of being precisely delineated, a judge abuses this discretion when he utilizes it to obviate a recognized claim or defense.

The substantive basis of all claims and defenses, "favored" and "disfavored" alike, are acts of the Legislature and the common-law decisions of this or other appellate Courts. The Legislature, not without criticism,[4] concluded that stringent measures were necessary to bring about compliance with the annual report and franchise fee requirements. This Court has steadily enforced that legislative policy.[5]

The allowance of an amendment is not an act of grace, but a right of a litigant seeking to amend "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive * * * , repeated failure to cure deficiencies * * * , undue prejudice * * * , futility of amendment, etc." *Foman v Davis, supra,* p 182.

If we were to recognize a judge's personal view of a claim or defense as a valid reason for rejecting an amendment, we would find it difficult to explain why his personal view should not also be relevant in assaying a claim or defense raised in the initial pleading.

---

*Refining Co v Phillips,* 404 SW2d 449, 450 (Ky, 1966), explained the working of its court rule also providing that leave to amend shall be "freely given when justice so requires." In effect, the Court stated that "justice" "requiring" was not a prerequisite for the filing of an amendment. Rather, such an amendment will be denied only if it would work "an injustice in the particular circumstance".

   *See, also, LaBar v Cooper, supra,* and *Congregation B'nai Sholom v Martin,* 382 Mich 659, 669; 173 NW2d 504 (1969); *Doan v Chesapeake & O R Co,* 18 Mich App 271, 280–281; 171 NW2d 27 (1969).

   [4] *See* 7 Wayne L Rev 128, 134 (1960); 16 Wayne L Rev 753, 756–758 (1970).

   [5] *See Dawn Construction Co v Paris Home Builders, Inc,* 360 Mich 281, 289; 103 NW2d 410 (1960); *Irvine & Meier v Wienner,* 212 Mich 199, 202; 180 NW 492 (1920); *Detroit United Fruit Auction Co v Kroger Grocery & Baking Co,* 227 Mich 412, 414–415; 198 NW 947 (1924).

An individual judge may not properly substitute his personal view of justice and sound public policy for the statutory, or common-law or court rule meant to apply.

There are some early statements, principally in cases where a statute of limitations defense was offered by amendment, that a court may properly deny an amendment which seeks to introduce a "disfavored plea".[6] Today a statute of limitations defense can be raised by amendment like any other matter (see fn 14). Those early statements have thus lost their impulse. For this reason and the other reasons stated, we do not find these statements persuasive.

We observe further that to allow the probable disposition of a case to be a factor in deciding whether to permit an amendment would deny the parties a full hearing on all the issues, facts and law, and inevitably would produce decisions based on scanty records composed of pleadings and moving papers and possibly, as in this case, oral argument.

No witnesses were present at the hearing on Gunter's motion to amend; no testimony was taken. Gunter had no occasion to challenge Fyke's factual assertions justifying its late filing of its annual report. All the "facts" were gleaned from Fyke's unverified statements.

On a motion to amend, a court should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face and, thus, as expressed in *Foman v Davis, supra,* it would be "futile" to allow the amendment. See 6 Wright & Miller, Federal Practice & Procedure, § 1487, p 432.

---

[6] *See, e.g., Cooke v Spears,* 2 Cal 409 (1852).

IV

Fyke, relying on *Wilson v Eubanks,* 36 Mich App 287, 293; 193 NW2d 353 (1971), where the Court of Appeals reversed an allowance of an amendment which sought to introduce a "technical" foreign statute of limitations defense, argues that Gunter's failure to plead in its answer the arguably technical annual report defense means that it too failed to "cut square corners" and thus the judge's rejection of the amendment was justified.

In *Wilson v Eubanks, supra,* the judge allowed the amendment two years after the action was commenced. Had the defendant initially raised the defense the plaintiffs would have been spared the two-year cost of prosecuting their action. During this period, the plaintiffs had participated in pretrial discovery, none of which was related to the statute of limitations defense. The costs incurred by the plaintiffs during the two-year delay in the assertion of the defense was a factor in the Court of Appeals' refusal to permit the amendment.

Even assuming both that Gunter's amendment asserts a technical defense and that its three-month delay in raising the defense was a failure to "cut square corners", we discern no similar prejudice in terms of unnecessary expense caused Fyke by Gunter's tardiness. The only pretrial discovery was Gunter's submission and Fyke's response to interrogatories; the focus of the interrogatories was directly related to, indeed the basis of, Gunter's amendment.[7]

As the author of the opinion in *Wilson v Eu-*

---

[7] *Contrast Bouas v Sociedad Maritima San Nicholas, S. A.,* 252 F Supp 286, 287 (SD NY, 1965); *cert den* 382 US 1025; 86 S Ct 646; 15 L Ed 2d 539 (1966): "The defendants, having burdened the plaintiff with pretrial procedures over the years after the alleged settlement was

*banks, supra,* I wish to confess that the opinion goes astray to the extent it appears to rest on a personal view of the Uniform Statute of Limitations on Foreign Claims Act.[8] The opinion reasoned that since borrowing statutes are enacted to prevent forum shopping and to avoid interminable tolling of limitational periods due to non-residence, it is beyond the policy of the Act to apply it to an action commenced in the Wayne Circuit Court by Detroit residents against another Detroit resident.

It would not be appropriate to attempt now to redefine the rule stated in *Wilson v Eubanks, supra.* Suffice it to say that I am now convinced that a judge, confronted with an imploring factual situation and a statute or rule of law which would appear to require a result contrary to his sense of the reason or justice of the situation, may not properly avoid grappling with the nettlesome problem of applying facts to law by creating a special rule for a case where the claim or defense is raised by amendment.

As mentioned, in *Wilson v Eubanks, supra,* the Court adverted to but did not rest decision on a possible construction of the controlling statute. Underlying this case too is a question of statutory construction. It appears that if Fyke is to prevail, existing precedent must be reexamined.

The new Business Corporation Act (1972 PA 284; MCLA 450.1101 *et seq.;* MSA 21.200[101] *et seq.)* does not bar maintenance of an action on a contract entered into during a period of default in filing an annual report and paying franchise fees. This change in legislative policy might justify reconsideration of existing precedent as the *in*

made without informing plaintiff's attorneys about it, should not now be allowed to deny the plaintiff his day in court."

[8] MCLA 600.5861; MSA 27A.5861.

*terrorem* purpose of the harsh penalties of the former act are no longer functional.

The constructional question has not been raised, briefed or argued. The factual allegations in support of Fyke's claim that the late filing of its annual report was justified have not been proven. We could not properly reach this question on the present appeal.

## V

In affirming the disallowance of the amendment the Court of Appeals said that Gunter's failure "timely to present its amendment constituted the primary basis for the trial judge's denial".

Delay by a moving party in offering an amendment can be a major source of prejudice to the opposing party. Witnesses may die. Evidentiary material may be lost or destroyed. Unnecessary expense may be incurred during the pretrial proceedings. The litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial.

Gunter submitted interrogatories seeking information relevant to the annual report defense eight days after filing its answer. No trial date had been set or was even imminent. Fyke's pretrial preparation was not delayed, nor was it put to unnecessary expenditures by Gunter's delay in raising the defense.

While "[a]s a general rule, the risk of substantial prejudice increases with the passage of time,"[9] in the absence of a showing of either bad faith or actual prejudice, mere delay does not warrant

---

[9] 6 Wright & Miller, Federal Practice & Procedure, § 1488, p 439.

denial of a motion to amend.[10] "All amendments have this in common: they are offered *later in time* than the pleading they seek to amend." James, Civil Procedure, § 5.2, p 158 (emphasis by the author).

## VI

At about the time of filing its answer or shortly thereafter, Gunter learned from a response to an inquiry to the Michigan Department of Treasury that Fyke had been in default in filing its annual report and paying fees. Fyke contends that because of this knowledge, Gunter should have raised the defense in its initial answer and its failure to do so constitutes bad faith and justifies denial of the amendment.

Gunter concedes that it did then have knowledge of the default. It asserts, however, that until Fyke answered the interrogatories seeking to determine when the contract between Fyke and Gunter was entered into it did not, due to the inadequacy of its own records, have sufficient information to plead the defense. The good faith of this assertion by Gunter is attested by its service of the interrogatories within eight days of its answer.

In *Standard Insurance Co v Pittsburgh Electrical Insulation, Inc,* 29 FRD 185, 187 (WD Pa, 1961), the court allowed an amendment saying, pertinently, a party "should not be required to

---

[10] *See Middle Atlantic Utilities Co v S.M.W. Development Corp,* 392 F2d 380, 384 (CA 2, 1968); *Public Administrator of New York County v Curtiss-Wright,* 224 F Supp 236, 238 (SD NY, 1963); *Fli-Fab, Inc v United States,* 16 FRD 553, 556 (D RI, 1954); *Standard Insurance Co v Pittsburgh Electrical Insulation, Inc,* 29 FRD 185, 186 (WD Pa, 1961); 3 Moore's Federal Practice, § 15.08[4], p 901; 6 Wright & Miller, Federal Practice & Procedure, § 1488, p 438.

make allegations on suspicion alone; in fact, the law frowns upon frivolous and unsubstantial claims. It was time enough to file the claim when it had gained some substantial evidence." The defendant had opposed the amendment contending that the plaintiff was acting in bad faith because it had knowledge of the basis for the amendment when its initial pleading was filed. The plaintiff admitted that it "suspected" the possibility of an additional claim but explained that as it had no documentary proof, "it needed the process of the courts and its discovery procedures to ferret out such evidence".

In *Ashland Oil & Refining Co v Phillips*, 404 SW2d 449 (Ky, 1966), the facts were again similar to those here. The plaintiff sought to amend the complaint on the basis of information gleaned from the defendant's answers to interrogatories. The trial court, in denying the motion, ascribed no specific reason for its action. The Court of Appeals, in reversing, noted the absence of any prejudice to the defendant and attributed a large share of the blame for the delay to the defendant's tardiness in answering the interrogatories.[11]

Gunter sought leave to amend on August 11. Its interrogatories to Fyke had been served on May 18 and answers were due within 15 days. Fyke failed to respond within that period. On June 16 Gunter moved for and on August 4 obtained a court order compelling answer. On that very day, the answers were served.

---

[11] *In accord, see Morgan v Superior Court,* 172 Cal App 2d 527; 343 P2d 62 (1959) (when plaintiff filed her complaint for divorce she suspected but did not have positive proof of defendant's adultery); *Spicer v Pennsylvania R Co,* 196 F Supp 679 (ED Pa, 1961) (the defendant, a year and a half after the filing of its answer, was allowed to amend to incorporate information gained through interrogatories three months before the motion to amend was filed).

## VII

Fyke further asserts that Gunter's proper procedural remedy to obtain the desired information regarding the dates was to move for a more definite statement in accordance with GCR 1963, 115.1 and that Gunter's failure to so move is another indicium of bad faith and justifies the court's disallowance of the proposed amendment. Rule 115.1 allows a party to move for a more definite statement before filing its responsive pleading if the opponent's "pleading is so vague or ambiguous that it fails to comply with the requirements of the rules." Other information regarding an adversary's claim or defense is to be obtained through discovery.[12]

Fyke's complaint properly set forth sufficient facts to state "his cause of action" and "to inform the adverse party of the nature of the cause he is called upon to defend". GCR 1963, 111.1. In this context, where the judge might properly have refused to grant a motion for a more definite statement, Gunter's failure to make such a motion does not justify a refusal to allow an amendment based on information obtained through discovery.

A contrary rule would unwisely encourage litigants to routinely move for more definite statements before proceeding with discovery. The resulting proliferation of Rule 115 motions would not be constructive.

## VIII

The trial judge also erred in relying on GCR

---

[12] *See* 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Authors' Comments concerning the purpose and function of this rule, pp 283–284; *Major v Schmidt Trucking Co,* 15 Mich App 75, 82; 166 NW2d 517 (1968).

1963, 111.3 and 111.7 to defeat the amendment.
Affirmative defenses, even if not asserted in the
initial answer, may be introduced by amendment.
The consequence of a failure to include an affirma-
tive defense in an answer is that testimony in
support of the defense "may be rejected, *unless* the
defect in the pleadings is cured by amendment".[13]
(Emphasis supplied.)

We align ourselves with the vast majority of
courts in holding that an affirmative defense may
be raised by amendment.[14]

Reversed and remanded for further proceedings
consistent with this opinion. Costs to appellant.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH,
SWAINSON, and WILLIAMS, JJ., concurred with
LEVIN, J.

T. E. BRENNAN, J. *(dissenting)*. On or about the
28th of July, 1969, defendant employed plaintiff to
do certain earth-moving work on a golf course

---

[13] *See* Authors' Comments, 1 Honigman & Hawkins, Michigan
Court Rules Annotated (2d ed), p 201.

5 Wright & Miller, Federal Practice & Procedure, § 1278, p 345, in
discussing the comparable federal rule, states:

"Moreover, even if defendant does not assert an affirmative defense
in his answer, he may amend his pleading under Rule 15(a) * * *
[even after the 20-day grace period during which amendments may be
filed as of right] * * * to assert an omitted affirmative defense on the
written consent of the adverse party or by leave of the court, which
'shall be freely given when justice so requires.' "

[14] *Groninger v Davison,* 364 F2d 638, 640 (CA 8, 1966) (statute of
limitations); *Emich Motors Corp v General Motors Corp,* 229 F2d 714,
716–718 (CA 7, 1956) (statute of limitations); *Kraushaar v Leschin,* 4
FRD 144, 145 (ED Pa, 1944) (statute of limitations); *Systems Inc v
Bridge Electronics Co,* 335 F2d 465, 466 (CA 3, 1964) (dictum in case
where defense was misrepresentation, fraud and economic duress);
*Villamor v Premier Insurance Co,* 13 Mich App 30, 33; 163 NW2d 697
(1968) (statute of limitations); *Great Lakes, Inc v Rumery Construc-
tion Co, Inc,* 23 Mich App 501, 506; 179 NW2d 36 (1970) (suspension of
plaintiff's powers for failure to file annual report at time contract
entered into). *Contrast Strauss v Douglas Aircraft Co,* 404 F2d 1152
(CA 2, 1968).

located in Memphis, Michigan. This agreement was orally made, with compensation to be based upon hourly rates for the use of bulldozer and draglines owned and operated by the plaintiff.

Between July 28, 1969, and October 11, 1969, plaintiff performed the agreed work for the defendant for a total charge of $21,834.

The defendant has not paid the plaintiff for this work.

On April 13, 1971, plaintiff commenced an action in the Circuit Court for Oakland County. Complaint was served on defendant, which filed an answer on May 10, 1971, admitting the contract and its performance, and disputing only the amount in which the defendant was indebted to the plaintiff.

On May 18, 1971, defendant filed and served on plaintiff a series of eight interrogatories, essentially seeking particulars on the plaintiff's claim. Defendant asked for the specific date of the oral contract, and the description and date of all services performed. These interrogatories were answered on August 2, 1971.

Thereafter, on August 11, 1971, defendant filed a motion for leave to amend its answer, alleging that the plaintiff's answer to interrogatories "indicate to defendant a defense which should be raised by accelerated judgment and/or summary judgment."

Defendant filed in circuit court a certificate of the Michigan Department of Treasury, dated May 5, 1971. It was as follows:

*"To All To Whom These Presents Shall Come:*

*"I, Allison Green, Treasurer of the State of Michigan, Do Hereby Certify That*

"BEN P. FYKE & SONS, Inc., a Michigan corporation, was incorporated in this State on March 30, 1954.

"The corporation filed all annual reports and paid the fees in connection therewith up to and including the 1970 report.

"I FURTHER CERTIFY that the 1968 annual report and fees, due May 15, 1968, were received in this office May 16, 1968 and the report was accepted for filing February 6, 1969. The 1969 report and fees, due May 15, 1969, were received January 9, 1970 and the report was accepted for filing March 18, 1970.

"This certificate is in due form and made by me as the proper officer, and is entitled to have full faith and credit given it in every court and office within the United States.

*"In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 5th day of May, 1971.*

"(s) Allison Green
"State Treasurer."

The circuit judge refused to allow the amendment.

The Court of Appeals affirmed, saying,

"The present defendant possessed accurate knowledge that plaintiff was a corporation at the time its answer was filed. The transcript of proceedings had on its motion further reveals defendant's admission that it either had knowledge of plaintiff's statutory violation before its answer was filed or immediately thereafter. Defendant offers no meritorious explanation for waiting approximately three months to file its motion to amend while possessing such knowledge. A review of the trial judge's primary basis for decision and an evaluation of his supplementary consideration fails to reveal error. Finding no abuse of discretion, we affirm the denial of defendant's motion to amend its pleadings.

"Affirmed."

My Brother LEVIN correctly points out that GCR 1963, 118.1, provides that leave to amend pleadings should be freely granted "when justice so

requires". He also correctly concludes that as a general proposition the effect of the amendment on the final outcome of the case, that is, the merits of the amendment are not usually to be considered by the trial judge in determining whether "justice requires" that leave to amend be granted.

Thus, the mere fact that an amendment to defendant's answer would provide a complete defense to the plaintiff's claim should not be ground for refusing leave to amend.

After all, every amendment is designed to improve the position of the amending party.

But, the nature of the defense may be considered by the trial court in evaluating the lateness of the proferred amendment.

The defense raised by defendant in the present case is not merely a technical or procedural advantage permitted by the law in the overall effort to do justice between the parties. The statute of limitations might be so described. The statute of frauds is similarly intended to advance the cause of justice as between contracting parties.

Even the harsh rule of MCLA 338.1516; MSA 18.86(116) prohibiting suit by unlicensed residential contractors is designed to afford a blanket of protection to consumers.

But, the defense of lack of capacity permitted by MCLA 450.87; MSA 21.87 has no such purpose.

It is more accurately a civil forfeiture, designed to enforce compliance with the filing requirements of the corporation laws.

To the extent that it enures to the benefit of individuals, such as the defendant here, it is no more than a bounty, offered by state government as a device to insure collection of corporate franchise taxes.

If the defendant had raised the defense in a timely fashion, the law would have permitted it to

be unjustly enriched in the amount of $21,834, thus severely punishing the plaintiff for its eight month delay in filing the annual report and paying the fees due on May 15, 1969.

But, although the law permits such forfeitures, equity abhors them. The trial judge ought not be required to close his eyes to the impact of the exercise of his discretion.

Here, the certificate of the Department of Treasury was issued five days before the defendant's answer was filed. In fact, that answer alleged that defendant was "without sufficient information to form a belief as to the identity of Plaintiff or as to the status of Plaintiff."

The thrust of defendant's argument was that, although the plaintiff's delay in filing its 1969 annual report was known, the fact that the agreement was made during the period of the corporate default was not apparent until August 2, 1971, when plaintiff filed answers to the defendant's interrogatories.

In view of the fact that the contract between the parties was admitted by defendant, it follows that defendant's officers and agents were fully aware of the agreement.

The date of that agreement was a matter equally within the knowledge of the parties. There was no need for interrogatories to determine whether the contract was made within the period of the plaintiff's corporate default.

These were considerations properly before the circuit judge when called upon to exercise his discretion to allow the defendant's belated amendment.

I would affirm the courts below.

M. S. COLEMAN, J., concurred with T. E. BRENNAN, J.