# STATE OF MICHIGAN

# COURT OF APPEALS

LEO H. VERGOTE and LEO H. VERGOTE
LIVING TRUST,

       Plaintiffs-Appellants,

v

LILLIAN E. VERGOTE, LILLIAN E. VERGOTE
LIVING TRUST, and FLB, LLC,

       Defendants-Appellees.

UNPUBLISHED
March 1, 2018

No. 336300
Macomb Circuit Court
LC No. 2016-002321-CK

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(8). For the reasons set forth in this opinion, we reverse the trial court's order and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from a dispute between plaintiff Leo Vergote and defendant Lillian Vergote,[1] who were formerly married, involving the 2016 sale of commercial real estate in Canton, Michigan ("the Canton property"). Plaintiff and defendant are managers of FLB, LLC ("FLB"), which was formed in 2000 and operated the Canton property. In 2002, defendant filed for divorce, and the judgment of divorce was entered on March 5, 2004. The judgment of divorce incorporated a property settlement agreement between the parties, which provided in pertinent part "that the parties will continue to own, manage and equally split the income from" the Canton property, which would be "held as tenants in common." The property settlement agreement also provided that defendant would "continue to perform the day to day management, maintenance and all other actions necessary" to managing the Canton property and that she would keep plaintiff "fully apprised at all times of the operation of the property under [her] control" by providing access to various records related to the finances and operation of the

---

[1] For the sake of simplicity, we will refer to plaintiff Leo Vergote as "plaintiff," and we will refer to defendant Lillian Vergote as "defendant".

property on a monthly basis. Furthermore, the property settlement agreement stated that each of the parties would receive half of the income resulting from a sale of certain properties listed in the agreement, including the Canton property, and that all "decisions relating to the listing, marketing and eventual sale of these properties must be agreed to in writing by both parties." Finally, as relevant to the issues raised in the instant appeal, the property settlement agreement stated that "[n]either party will incur unnecessary expenses or do any other acts" relating to certain listed properties that included the Canton property, "which impairs either the value of the property or the monthly income to be derived from the property."

In 2015, plaintiff consented to defendant selling the Canton property for a sale price of $3.65 million. After the sale, defendant distributed the proceeds "to her Trust and her children, sending [plaintiff] approximately $25,000.00 out of the $3.65 million in sale proceeds as his alleged distribution." After the closing, plaintiff learned that defendant had given her trust a mortgage in 2012 against the Canton property in excess of $700,000 and that defendant was paid $717,517.96 at the closing on the sale of the Canton property.

Plaintiff initially filed a complaint on July 1, 2016, in which he alleged seven counts. Plaintiff included FLB as an additional plaintiff, and he included as defendants the children, Steven Vergote, Daniel Vergote, Karen Phillips, and Kathy Middlebrooks, both in their individual capacities and as trustees for the trusts of the grandchildren. In his complaint, plaintiff stated that when FLB was initially formed, both he and defendant, as trustees for their respective trusts, owned 50% of the company. But plaintiff also acknowledged that in 2000, they "each gifted 49.005 of their respective 50 membership units to their children and to living trusts for the benefit of their grandchildren," which left plaintiff and defendant each with a 0.995% ownership stake in FLB. Plaintiff noted that there was language in the property settlement agreement stating that "any wills or trusts made by the parties are cancelled and voided" and that the Canton property was to be owned equally by plaintiff and defendant. Plaintiff alleged that the previously gifted membership interests in FLB were to have been assigned back to plaintiff and defendant and that there was a controversy about the proper membership percentages of FLB.

Defendant filed a motion for summary disposition under MCR 2.116(C)(8), arguing that plaintiff could not prevail because he could not show how he suffered any damages. Defendant argued that the children retained their FLB membership interests because the transfers to the children were not revoked by the property settlement agreement and the children's membership interests were never assigned back to plaintiff. Defendant further noted that plaintiff never even alleged that the children *actually* assigned these interests back to plaintiff. Additionally, defendant argued that the trusts for the grandchildren were irrevocable, so any attempt to void their gifts was futile. Further, defendant stated that plaintiff failed to plead any damages because he did not specify what additional capital contributions he made to the Canton property and admitted that he received a $25,000 distribution, which was based on his entitled share (0.995%) from the sale proceeds. Defendant indicated in her brief in support of her motion for summary disposition that although 0.995% of $3.65 million is $36,317.50, the remaining distribution to plaintiff was $25,000 after the fees and costs associated with the sale transaction.

Plaintiff responded to the motion and filed his first amended complaint, which removed any allegations related to the gifting of membership units in FLB. The amended complaint alleged four counts: (1) breach of agreements, (2) quantum meruit, unjust enrichment, implied

contract and constructive fraud, (3) recovery of unauthorized distribution of FLB funds and for accounting, and (4) breach of fiduciary duty and oppressive conduct. In his first amended complaint, plaintiff named FLB as a defendant, did not include FLB as a plaintiff, and did not include the children as additional defendants. Plaintiff argued in his supporting brief that the first amended complaint stated a claim upon which relief could be granted. Plaintiff further argued that the judgment of divorce and property settlement agreement obligated defendant to pay plaintiff half of the proceeds from the Canton property, that these agreements required defendant to provide plaintiff a full accounting and full disclosure regarding the management of the Canton property, and that these agreements prohibited defendant from encumbering the property with a mortgage.

Defendant then filed a reply brief in support of her motion for summary disposition and stated that the amended complaint still failed to allege any factual basis for plaintiff's claim of damages. Defendant essentially argued as pertinent to the issues on appeal that although plaintiff had abandoned his theory that he was entitled to a membership share of FLB greater than .995%, he still had not alleged any facts to support a claim that he incurred damages. Accordingly, defendant argued, plaintiff could not maintain any of his alleged causes of action and dismissal was still warranted.

At the hearing on defendant's motion for summary disposition, plaintiff argued that defendant gave herself a $700,000 mortgage, took that money "off the top of the sale," and kept that money. Plaintiff also conceded that the parties gifted membership interests to the children, that plaintiff had an ownership interest of less than 1%, and that he was only entitled to that percentage of FLB's proceeds from the sale. However, plaintiff argued that the $700,000 from the mortgage should have been included in the proceeds to FLB rather than being used to pay the mortgage. Further, when asked if there was any contract governing the recoupment of any improvements, plaintiff argued that the property settlement agreement indicated that plaintiff and defendant each owned half of the equity in the property and were entitled to recoup their respective investments in developing the property. However, defendant argued that plaintiff had received the full distribution to which he was entitled and that there were no damages based on the mortgage because defendant only retained an amount of the proceeds equal to her 1% membership interest and the funds were properly distributed. Defendant maintained that the action should be dismissed because plaintiff had failed to allege a source of damages in the complaint.

The trial court concluded that plaintiff received the value to which he was entitled based on his ownership interest and granted defendant's motion for summary disposition. In its order granting summary disposition, the trial court dismissed the case with prejudice.

Plaintiff filed a motion for limited reconsideration requesting the trial court to reinstate plaintiff's claim seeking an accounting. Plaintiff argued that he specifically requested an accounting regarding defendant's grant of a mortgage to her trust and that plaintiff did not have any notification before the sale that the mortgage had been granted. Plaintiff requested that in the alternative, he be allowed to amend his complaint in order to obtain an accounting. The trial court denied plaintiff's motion.

This appeal ensued. On appeal, plaintiff argues that he did in fact state valid claims on which relief could be granted.

## II. ISSUE PRESERVATION

As an initial matter, defendant argues that plaintiff's appellate brief did not comply with MCR 7.212(C)(7) because the facts in the argument section did not include sufficient record citations and because plaintiff failed to provide a record citation showing that the appellate preservation requirements were satisfied. MCR 7.212(C)(7) provides in pertinent part that facts in the argument section "must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court" and that "[p]age references to the transcript, the pleadings, or other document or paper filed with the trial court must also be given to show whether the issue was preserved for appeal by appropriate objection or by other means." Defendant further argues that as a result of these alleged deficiencies, we must review plaintiff's appellate challenge for plain error.

However, contrary to defendant's assertions, plaintiff's statement of facts in his brief did include citations to the record. Although some record citations could have been more specific and plaintiff's brief does appear to contain some factual statements that are unsupported by appropriate record citations, we conclude that the brief substantially complies with the requirements of MCR 7.212(C)(7) and that no further action is necessary with respect to plaintiff's brief. MCR 7.212(I).[2] Moreover, our factual recitation and legal analysis is based on our own review of the record, and any factual statements made by a party that are unsupported by the record have no bearing on our analysis. With respect to issue preservation, although plaintiff did not explicitly explain why his appellate challenge was preserved, it is clear from the record, as well as by the portions of the record cited by plaintiff in his appellate brief, that plaintiff's appellate challenge is preserved for our review. Plaintiff responded to defendant's (C)(8) motion by filing a first amended complaint and arguing in opposition to defendant's motion that the first amended complaint stated a valid claim. The trial court rejected plaintiff's arguments regarding the meaning of the allegations in the complaint and granted summary disposition in favor of defendant. Therefore, because plaintiff's challenge to defendant's (C)(8) motion was raised, addressed, and decided by the trial court, this challenge is preserved for appellate review. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014).

## III. STANDARD OF REVIEW

---

[2] MCR 7.212(I) provides as follows:

> If, on its own initiative or on a party's motion, the court concludes that a brief does not substantially comply with the requirements in this rule, it may order the party who filed the brief to file a supplemental brief within a specified time correcting the deficiencies, or it may strike the nonconforming brief.

"This Court reviews de novo a trial court's decision on a summary disposition motion to determine if the moving party was entitled to judgment as a matter of law." *Bergman v Cotanche*, 319 Mich App 10, 15; 899 NW2d 754 (2017). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the pleadings alone. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). On a motion under MCR 2.116(C)(8), "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). While we may draw reasonable inferences from the facts alleged, mere conclusory statements that are not supported by factual allegations are insufficient to state a cause of action. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 210; 859 NW2d 238 (2014). The motion should be granted if the plaintiff has not stated a claim upon which relief can be granted and no factual development could potentially justify recovery. *Beaudrie*, 465 Mich at 129-130.

## IV. ANALYSIS

Plaintiff's first amended complaint[3] alleged four counts: (1) breach of agreements, (2) quantum meruit, unjust enrichment, implied contract and constructive fraud, (3) recovery of unauthorized distribution of FLB funds and for accounting, and (4) breach of fiduciary duty and oppressive conduct. The various claims asserted by plaintiff were primarily based on the same set of allegations. Plaintiff specifically alleged that the property settlement agreement provided that defendant would be responsible for managing the daily operations regarding the Canton property, that defendant could not impair the value of the property, that defendant had to keep plaintiff informed regarding the management of the Canton property by providing records, and that plaintiff only found out after the closing on the sale of the Canton property that defendant had given her trust a mortgage against the property and was paid $717,517.96 at closing. Plaintiff further alleged that defendant had contacted him before the sale to obtain his consent, as required by the property settlement agreement, to sell the Canton property for $3.65 million. Plaintiff alleged that he consented to the sale but requested financial accounting information for the property. According to plaintiff, he did not receive information that he requested before the closing on the sale and only received a distribution of $25,000 from the $3.65 million sale and incurred damages "in excess of $500,000."

In Count I, plaintiff essentially asserted a claim for breach of contract, alleging that defendant's conduct breached the property settlement agreement, which was incorporated in the judgment of divorce, and caused the aforementioned damages.

---

[3] Because an amended pleading supersedes a former pleading unless otherwise stated, MCR 2.118(A)(4), and plaintiff's first amended complaint does not otherwise state, we confine our review of whether defendant's (C)(8) motion was properly granted to the first amended complaint. We also note that we may properly consider the judgment of divorce and the property settlement agreement because plaintiff referred to these documents in the first amended complaint to support his claims and attached both of these documents to his first amended complaint; such exhibits are "a part of the pleading for all purposes," MCR 2.113(F)(2).

In Count II, plaintiff alleged that he "contributed substantial funds and improvements" to the Canton property that "substantially increased the value" of the property and that he was not reimbursed for these expenditures, resulting in damages "in excess of $500,000." Plaintiff did not specifically indicate what these improvements were, when they were made, or how they increased the value of the property. Plaintiff further alleged that defendant's actions that were unauthorized by the property settlement agreement and judgment of divorce—specifically that defendant represented that plaintiff would receive half the proceeds of the sale or would be reimbursed for his expenditures and that defendant failed to disclose the existence of the transactions involving her trust and the Canton property in contravention of her duty to do so considering her superior position of knowledge—constituted constructive fraud because plaintiff relied on those representations when he consented to the sale of the Canton property.

In Counts III and IV, which essentially related to defendant's actions as a manager of FLB, plaintiff alleged that by granting the mortgage without informing plaintiff or obtaining his consent and by distributing the proceeds from the sale of the Canton property without obtaining plaintiff's consent, defendant acted beyond the authority granted to her as a manager of FLB under the operating agreement. Plaintiff further alleged that defendant's conduct constituted self-dealing, a breach of her fiduciary duties, and oppressive conduct toward plaintiff. Plaintiff also claimed that defendant had failed to provide an accounting and financial information regarding FLB to plaintiff despite his written requests and that defendant did not respond to his written demand for a revision of the capital accounts for FLB.

The trial court's ruling granting summary disposition was based solely on its conclusion that plaintiff had failed to allege damages and had received the entire distribution to which he was entitled based on his ownership interest.[4] Although plaintiff alleged several distinct causes of action, the trial court did not specifically address each of these claims but instead applied its general conclusion in blanket fashion to the entire cause of action. Admittedly, the first amended complaint is not a model of clarity in expressing the basis for plaintiff's claim of damages.

---

[4] Crucial to this conclusion was the determination that plaintiff only held a .995% membership interest in FLB. We further note that plaintiff did not include in the first amended complaint the allegation that he and defendant each gifted 49.005 of their respective 50 membership units in FLB to their children and the living trusts of their grandchildren—an allegation that was included in the original complaint—but that plaintiff nonetheless conceded during oral argument at the motion hearing that he had an ownership interest in FLB of less than 1% and that he was only entitled to that percentage of FLB's proceeds from the sale of the Canton property. Plaintiff also did not allege in the first amended complaint that he actually held any greater ownership stake in FLB or that his ownership stake in FLB entitled him to a greater distribution percentage. Regardless, we assume without deciding that the trial court properly relied on this allegation as true for the purposes of the summary disposition motion because it does not impact our analysis. However, we also note that plaintiff *did* allege in his first amended complaint that he was entitled to half the proceeds of the Canton property sale pursuant to the terms of the property settlement agreement between the parties. The trial court never addressed the existence of this apparent discrepancy.

However, at the motion hearing, plaintiff stated that the essence of his claim was that defendant gave herself a mortgage and took that money "off the top of the sale" before distributing plaintiff's share of the proceeds to him. In other words, if plaintiff consented to selling the property for $3.65 million thinking that his distribution share would be based on that sale price, but he actually received a distribution that was calculated based on the difference between $3.65 million and approximately $700,000 for the mortgage that he did not know about and that defendant was allegedly unauthorized to grant, then plaintiff would have incurred damages because he received a smaller distribution then expected, even if his distribution was calculated based on the proper ownership share of .995%. Simply lumping the mortgage in with the other closing costs and fees does not negate such a claim for damages because the crux of the claim is that the deduction of the mortgage amount from the sale price before distributing the proceeds was not anticipated by plaintiff when he agreed to the sale price of $3.65 million. Furthermore, the first amended complaint alleged that defendant's act of granting a mortgage against the Canton property without disclosing this fact to plaintiff or consulting him about it was not authorized under the various agreements between the parties.

Based on the entirety of the record before us, we conclude that plaintiff's intended theory of damages in this respect is *fairly* discernable from the face of the first amended complaint. Moreover, to the extent the first amended complaint was not clear to the trial court, plaintiff should have been provided an opportunity to further amend the complaint. "If a trial court grants summary disposition pursuant to MCR 2.116(C)(8), (C)(9), or (C)(10), the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Yudashkin v Linzmeyer*, 247 Mich App 642, 651; 637 NW2d 257 (2001) (quotation marks and citation omitted); see also MCR 2.116(I)(5) ("If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."). "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Yudashkin*, 247 Mich App at 651 (quotation marks and citation omitted). Under MCR 2.118(A)(2), a party may amend a pleading by leave of the court and that "[l]eave shall be freely given when justice so requires." Leave to amend a pleading should ordinarily be granted unless there exists indications of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973) (quotation marks and citation omitted).

Here, considering the first amended complaint in light of the clarification provided by plaintiff's argument at the motion hearing, plaintiff's theory of monetary damages based on the existence of the mortgage was clearer. As stated above, accepting plaintiff's allegations as true for purposes of a (C)(8) motion would demonstrate damages, which was the only element that the trial court determined was nonexistent in ruling that plaintiff had failed to state a claim. Therefore, such an amendment would not have been futile, and the trial court should have given plaintiff an opportunity to amend his pleading accordingly. MCR 2.116(I)(5); *Yudashkin*, 247 Mich App at 651. There is no indication that plaintiff failed to more clearly amend his complaint in the first instance out of bad faith or dilatory motive, and plaintiff has not *repeatedly* failed to cure the deficiencies in his complaint. *Ben P Fyke & Sons*, 390 Mich at 656. Furthermore, it cannot be said, considering what was presented to the trial court, that no factual development

-7-

could potentially justify recovery in this case because if plaintiff's claim is true—that he agreed to a sale price without knowing that the amount of the mortgage would be deducted from that sale price before calculating his distribution—then plaintiff could establish monetary damages. *Beaudrie*, 465 Mich at 129-130. Accordingly, in this case, the trial court erred by granting summary disposition pursuant to MCR 2.116(C)(8) on this ground without providing an opportunity for plaintiff to amend his pleading in this case.

Because the trial court did not make any additional rulings related to the multiple claims raised by plaintiff in his first amended complaint, there is nothing further for this Court to review in this respect. We also decline to address defendant's additional arguments that essentially amount to proposing alternate grounds for affirmance because the trial court also did not make any ruling directed at these arguments. Our review is generally limited to matters actually decided by the lower court. *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994).

However, we also find it important to point out that the trial court, in dismissing plaintiff's entire cause of action based solely on its conclusion that plaintiff had received the entire monetary distribution to which he was entitled, failed to address plaintiff's claim that requested an accounting, which does not require an allegation of monetary damages. MCL 450.4503(5) provides that a "member may have a formal accounting of a limited liability company's affairs, as provided in an operating agreement or whenever circumstances render it just and reasonable." In both his first amended complaint and his motion for reconsideration, plaintiff alleged that defendant had failed to provide him with an accounting and financial records related to the Canton property on behalf of FLB despite his written requests for this information, and plaintiff requested the trial court to order such an accounting to be provided. Yet, the trial court denied plaintiff's request for an accounting without ever analyzing whether plaintiff had sufficiently alleged that he was entitled to such an order. Nonetheless, considering our disposition of this case, it is unnecessary for us to address this issue further at this time.

Reversed and remanded for further proceedings consistent with this opinion. No costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle