**Al Myers and Paulyn MYERS,
Plaintiffs/Appellees,**

v.

**Jonathan C. OSTLING,
Defendant/Appellant.**

No. 01–CV–73412.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 27, 2002.

Thomas A. Marcucci, Pleasant Ridge, MI, for appellant.

Russell R. Wise, Wise & Wise, Southfield, MI, for appellee.

## OPINION AND ORDER

STEEH, District Judge.

Jonathan Ostling, debtor in a bankruptcy proceeding, appeals from a July 17, 2001 opinion issued by Bankruptcy Judge Burton Perlman in a related adversary proceeding. The trial court found that plaintiffs were entitled to judgment against defendant in the amount of $447,407.00, and that the debt was nondischargeable in the debtor's bankruptcy. For the reasons set forth below, the challenged July 17, 2001 opinion and order is affirmed.

## BACKGROUND

In 1996, Albert and Paulyn Myers sought renters for a residence they had built as an investment. Defendant Jonathan Ostling and his wife Melaia Ostling, looking for housing, responded to a newspaper advertisement placed by the Myers. The Ostlings filled out a rental application, which plaintiffs submitted to a credit service. The credit reports indicated a fairly good credit rating for the defendant and a less favorable rating for Melaia Ostling.

The Plaintiffs leased the residence to the Ostlings on June 22, 1996 but only required Defendant to sign the lease, which included an option to buy.

Defendant and his family moved into the residence in July 1996 and thereafter left for a vacation in Tonga. As time progressed and after their return in August 1996, the Myers developed a relationship with Melaia Ostling. During this time, Melaia Ostling began making statements regarding her family's wealth. Paulyn Myers contends Melaia further indicated Sione Tuineau, Melaia Ostling's brother, had recently passed away leaving her a vast estate. Plaintiffs contend the defendant further stated this wealth would be "great" because he could pay cash for the purchase of the residence. Melaia Ostling met with the plaintiffs and a realtor to draw up documents for a new lease agreement. Defendant was not present and Melaia Ostling expressed defendant's lack of interest in the residence and that defendant wanted a "bigger and better" home. Melaia Ostling signed the new lease agreement alone. Ultimately, the Myers were convinced to turn over what they assert was their life savings to Melaia Ostling, totaling approximately $479,000, as they were convinced that the money would be returned and that Melaia Ostling was in a position to offer them lucrative real estate management positions in exchange for the loan.

At trial, plaintiffs stated that as time progressed Melaia Ostling discussed her mother's wealth and her father's affiliation with the Tongan royal family. Plaintiffs assert defendant acknowledged and furthered Melaia Ostling's misrepresentations. The defendant denied making these alleged falsehoods, and states if anything the statements were an ongoing joke between defendant and Melaia Ostling.

A year after the plaintiffs met defendant and his wife, Melaia asked Paulyn Myers to handle her finances. Melaia Ostling apparently communicated to Paulyn Myers her interest in the purchase of the home, but stated that she could not purchase it at the time because she was tied up in international dealings. Plaintiff further alleges Melaia Ostling stated she had inherited an apartment complex in Bloomfield Hills, Michigan and wanted plaintiffs to manage the complex. Defendant, meanwhile, contends he rarely spoke with plaintiffs because of a "falling out" with Al Myers. Plaintiffs assert that Melaia Ostling told them that she and the defendant were having marital difficulties and that he was going to move out.

On January 30, 1997, Plaintiffs executed a land contract solely with Melaia Ostling. According to the plaintiffs, their attorney warned them to refrain from dealing with Melaia Myers. Nevertheless, plaintiffs state they began lending money to Melaia Ostling. In March 1997, a dinner took place at the Rattlesnake Club in downtown Detroit. Plaintiffs allege this was arranged as a meeting between the Myers and Melaia Ostling's allegedly wealthy mother, who never made an appearance. On that occasion, plaintiffs asserted they had a conversation with defendant in which he advised plaintiffs to form an S Corporation if they were going to manage Melaia's apartment complex. Plaintiffs also assert defendant commented that Melaia's mother was staying at the Westin Hotel. However, defendant denies making any such statements and maintains dinner at the Rattlesnake Club was a celebration of his profit-sharing bonus and the plaintiffs were unwelcome guests. Defendant attributes any comments made concerning an S Corporation to the fact that his father formed one.

Plaintiffs state they were again invited to meet Melaia Ostling's mother at defendant's daughter's basketball game. Plaintiffs apparently asked defendant if he knew of Melaia Ostling's mother's whereabouts, to which plaintiffs contend he told them she was not feeling well. Another instance in which defendant fabricated information about Melaia Ostling's mother occurred when plaintiffs contacted defendant to relay a message from Melaia Ostling's mother and defendant expressed surprise as she does not speak English, only Tongan. This was repeated on another occasion in the presence of builder Robert Roberts.

At trial, Robert Roberts testified he was hired in the summer of 1996 by the Myers to work on the basement of the residence rented by the Ostlings. Roberts testified at trial that defendant and his wife offered him an apartment complex management position, and described his conversations with defendant and Melaia Ostling regarding Melaia's extensive wealth and royalty.

Roberts further asserted that the defendant discussed investment opportunities available to Roberts and defendant in the purchasing, repairing, and resale of property, and asserted that defendant and Roberts inquired into homes for this purpose. A formal business agreement was never agreed upon or drawn up between Roberts and defendant. Roberts' testimony indicates he loaned defendant five thousand dollars which was immediately wired to Melaia Ostling in San Francisco. Although Melaia Ostling did endorse a check to repay the amount, the check bounced.

Roberts stated defendant and Melaia Ostling were looking for investment property they intended to rent to their nanny. Defendant disputes this allegation and states because of the marital strife the homes they were inquiring into were for

defendant and defendant did not know why Roberts was "tagging along."

In 1997 Melaia Ostling contacted Susan Richards, a realtor. Defendant and Melaia Ostling met Richards in the spring of 1998. Richards' impression was that the Ostlings were in search of a home for their nanny. Defendant wrote an offer for property in Romeo, Michigan, which he asserted was for him as he and his wife were separating. Defendant paid a one-thousand dollar security deposit but never consummated the transaction.

Defendant and his wife subsequently met with Joe Isreal, a builder. Concerning the financing of a building project, Melaia Ostling stated payment for the project would be in cash. Defendant was present and did not correct Melaia Ostling's statement. Moreover, Richards stated he gave listing sheets to defendant and witnessed him signing paperwork and offers. In approximately March 1998, Israel discussed with defendant the need for a retainer before a build-to-suit project could commence, in response to which defendant described his wife's purported wealth to Richards.

Oakland County Sheriff Detective John Meiers testified concerning Melaia Ostling's previous criminal fraud background, and Melaia Ostling's discussion with Meiers about the fraud. Meiers related Melaia Ostling's admissions that she had lied to the Myers and to her husband. Although defendant was not charged or arrested for any crimes, Meiers testified through his investigation that he concluded defendant was involved in the fraud perpetrated on the plaintiffs.

The FBI's Special Agent Brian Young testified about the FBI's involvement in the investigation that began around December 1997. Agent Young interviewed defendant concerning his involvement with Melaia Ostling's fraud, and defendant as-

serted he did not know of the fraud committed, and contended that his wife's sister had won the lottery in New Zealand. Concerning questions about Melaia Ostling's royal status, defendant apparently responded it was a running joke.

Agent Young further testified about the execution of a search warrant in June of 1998 at the Ostlings' residence and documents that were confiscated. Those documents included bank, retirement account, and other financial records. Agent Young further stated his opinion that it would be highly unlikely that an individual living in the same home as Melaia Ostling would be unaware of her fraudulent acts.

In the adversary proceeding the bankruptcy court resolved all of the factual disputes in favor of plaintiff and based upon a finding of active fraud by defendant entered judgment against the defendant in the amount of $447,407.00, and found that the debt was nondischargeable. The trial court applied § 523(a)(6) of the Bankruptcy Code, which provides in part that a debt is not dischargeable if it was incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity," to reach its conclusion concerning dischargeability.

Defendant/appellant seeks review of the bankruptcy court's determination, asserting several grounds on appeal, addressed in turn, below.

## STANDARD OF REVIEW

■ In an appeal of a bankruptcy court's decision by the district court, the bankruptcy court's factual findings will not be overturned unless they are clearly erroneous. *In re Southern Industrial Banking Corp.*, 809 F.2d 329, 331 (6th Cir.1987); Bankr.Rule 8013. Conclusions of law are reviewed de novo by the district court. *Barclays/American Business Credit v.*

*Adams*, 171 B.R. 298, 301 (W.D.Tenn. 1992).

## ANALYSIS

### IA. Testimony of Myers and Young

■ The court will first address defendant/appellant Jonathan Ostling's contention that the opinion testimony of Detective John Meiers and FBI Agent Young was not admissible. As the discussion regarding the admissibility of the testimony of these two witnesses is substantively the same, the court will address the two issues together. In reviewing the testimony of John Meiers and Agent Young, the applicable standard of review is abuse of discretion. Abuse of discretion occurs "when the court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous standard." *In re Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp.*, 237 B.R. 322, 326 (6th Cir.1999). It is this court's determination that the trial court did not err in allowing Meiers and Young to testify as to their opinions about appellant's knowledge of Melaia Ostling's fraudulent activities. Detective Meiers and Special Agent Young were testifying to facts of which they had personal knowledge, as they had interviewed Melaia Ostling, defendant, plaintiffs, and other individuals involved. Although Detective Meiers and Agent Young are knowledgeable individuals in their fields, the opinions elicited from both men were based on the factual information available to them and lay witness inferences. These opinions are permitted by Federal Rules of Evidence 701 which admits testimony if it is "(a) rationally based on the perception of the witness and (b) helpful to the clear understanding of the witness' testimony or the determination of a fact in issue."

Both individuals conducted thorough investigations and it is not disputed that

both men were knowledgeable in their field. However, as the trial court specifically stated, their testimony concerning defendant's knowledge of, and involvement in, his wife's activities was not rooted in that expertise. The testimony elicited from Detective Meiers and Agent Young was admitted as that of lay witnesses, and this court will not overturn that ruling of the trial court.

### IB. Production of documents

■ The court next turns to appellant's contention that there was error in the trial court's refusal to order the production of documents relied on by FBI Agent Young in forming his testimony. Important to the court's consideration of this claim is the fact that appellant has not disputed appellees' assertion that appellant never made a request to the trial court concerning access to these documents prior to trial. It appears that appellees are correct in asserting that the only document Agent Young used in giving testimony was a redacted 302 statement used in the preparation of the case against defendant's wife, which was provided to defendant/appellant. Appellant's assignment of error appears to be that the denial of access to the FBI files prevented appellant from impeaching the witness in connection with those documents.

Fed.R.Civ.P. 26(b), concerning discovery, limits the scope of examination only to that which is relevant, and relevance in this context is defined in terms of the likelihood that useful evidence may be uncovered. Moreover, the Federal Rules of Civil Procedure expressly limit the scope of discovery to those matters which are not privileged. Fed.R.Civ.P. 26(b). The United States has the right to object on the grounds of privilege when the disclosure of secret information would be contrary to public policy or the public interest.

Much of the information contained within investigative files of the Federal Bureau of Investigation (FBI) might fall within this government privilege to protect the public interest. The public interest in encouraging cooperation with the FBI and in protecting the results of their investigations from scrutiny certainly could outweigh the defendant's interest in compelling production of FBI files.

In this matter, appellant does not dispute appellees' assertion that prior to trial the appellant did not pursue production of the FBI documents. Furthermore, plaintiff was given and took advantage of the opportunity to cross-examine Agent Young. Therefore, whether or not Agent Young's testimony relied upon documents other than the redacted 302 statement provided to the appellant, this court does not find a necessity outweighing the public interest, especially in light of the fact that appellant apparently did not seek production of the documents prior to trial. The court does not find that the defendant was denied a fair trial or the right to effective cross-examination, as he contends.

### II. Trial court's adjournment of trial date; testimony of Melaia Ostling

■ Appellant next contends that error was committed by the trial court in not granting him a continuance in order to secure the testimony of Melaia Ostling, who was incarcerated at the time of defendant's trial. However, this court agrees with the appellees that it is within the sound discretion of the trial court to manage its docket, and the court must do so consistent with the court's authority to offer prompt and efficient administration of justice. *United States v. Holden,* 963 F.2d 1114, 1115 (8th Cir.1992). The court has complete discretion in adjourning trial dates. "Continuances are not favored and should be granted only when a compelling

reason has been shown.." *United States v. Weisman,* 858 F.2d 389, 391 (8th Cir.1988). Although Melaia Ostling was incarcerated, she was free for deposition at her place of incarceration and, as appellant acknowledged at oral argument on this matter, he did not seek a *de bene esse* deposition in order to present her testimony. Therefore, this Court finds the trial court did not abuse its discretion.

### III. Denial of appellant's motion for summary judgment

Under Federal Rules of Bankruptcy 7056(c) incorporating Fed.R.Civ.Pro. 56(c), summary judgment as to all or a part of a movant's claim is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A motion for summary judgment must be granted where, after examining all facts established by the record, the court finds that no reasonable fact-finder could return a judgment in favor of the nonmoving party. *DXS, Inc. v. Siemens, Inc.* 100 F.3d 462, 466–67 (6th Cir.1996). The decision to grant summary judgment, a legal conclusion, is reviewed de novo. *Myers v. IRS* (*In re Myers*), 216 B.R. 402 (6th Cir. BAP 1996).

As described above, this case presents obvious disputed issues of material fact, all bearing on whether Jonathan Ostling assisted in the perpetration of Melaia Ostling's fraud. Defendant contends plaintiffs provided nothing more than a "metaphysical belief" concerning his involvement in the fraud; however, plaintiffs made a showing with evidence at the trial in this matter supporting their contentions. Various witnesses testified about Jonathan Ostling's knowledge and support of fraudulent activities between Melaia Ostling and the Myers. Jonathan Ostling helped create his wife's false persona in order to mislead the Myers, Robert Roberts, and Joe Israel.

Additionally, Jonathan Ostling accompanied his wife and was instrumental in seeking out homes and build-to-suit projects for purchase, knowing his negotiated purchase agreements could not be fulfilled. It appears that the trial court correctly concluded that Jonathan Ostling knew that injuries to plaintiff were certain, yet continued to promote his wife's larcenous behavior. It is this court's determination that the trial court did not err in denying appellant's motion for summary disposition.

### IVA. Did trial court properly enter judgment against defendant as a joint tortfeasor and was trial court correct in finding debt non-dischargeable?

The Bankruptcy Court determined that Jonathan Ostling was a joint tortfeasor with Melaia Ostling, that he was jointly and severally liable for the entire sum claimed by plaintiffs, $447,407, and that the debt was nondischargeable. The court relied on 11 U.S.C. § 523(a)(6) in determining that the debt was not dischargeable. That provision states that a debt is not dischargeable if it involves ". . . willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Appellant contends that Michigan is no longer a joint and several liability state, and that the acts taken by defendant did not represent willful and malicious injury to plaintiffs. Furthermore, appellant contends that the trial court was not correct in entering judgment against Jonathan Ostling in any amount, as an order of restitution in Melaia Ostling's criminal case stemming from the same activities has already

been entered against Melaia Ostling for the amount of $467,407.00. In support of his arguments, appellant asserts that the trial court had already found that plaintiffs could not justifiably rely on alleged statements made by Jonathan Ostling, and that Albert Myers testified that Jonathan Ostling's statements did not make any difference in his decision to make a loan to Melaia.

The parties agree that joint and several liability is no longer the law in the state of Michigan. Appellees contend, however, that in order to apply the several liability scheme set forth in *Smiley v. Corrigan,* 248 Mich.App. 51, 638 N.W.2d 151, 153 (2001), the fact finder must be able to apportion liability. Appellees assert that in this instance, it would have been impossible to apportion damages, because the appellant's actions intentionally enhanced the ability of his wife to defraud Mr. and Mrs. Myers. Further, appellees assert that the appellant never asked the trial court to make such an apportionment, constituting a waiver of the apportionment, and that it is not the responsibility of the trial court to apportion fault unless the appellant makes such a request.

Regarding nondischargeability, the trial court cited to the case of *In re Markowitz,* 190 F.3d 455 (6th Cir.1999), for the proposition that the test under 11 U.S.C. § 523(a)(6) (quoted above) is whether the defendant "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz,* 190 F.3d at 465 n. 10. The trial court in this matter determined that appellant Jonathan Ostling knew of his wife's fraudulent activities and acted to facilitate them. The trial court pointed to the testimony of Detective Meiers, Agent Young, Paulyn Myers, Robert Roberts, and Joseph Israel describing misrepresentations made by appellant concerning his wife's

alleged Tongan royal heritage. In view of that evidence, the trial court concluded that the defendant knew that injury to the plaintiffs was "substantially certain to occur as a result of his behavior," and that therefore the damages suffered by plaintiffs were nondischargeable.

In reviewing the determinations of the trial court, this court is in agreement with the trial court's finding that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The bankruptcy court's findings of fact concerning the actions of Jonathan Ostling were not, in the opinion of this court, clearly erroneous, and this court is in agreement with a finding of nondischargeability pursuant to § 523(a)(6).

Concerning the issue of appellant's joint tortfeasor status with Melaia Ostling, the court notes, as the parties agree, that the State of Michigan now applies the law of several liability rather than joint and several liability *vis a vis* tortfeasors. *Smiley v. Corrigan,* 248 Mich.App. 51, 638 N.W.2d 151. The court notes that the trial court did not refute this, but was specifically addressing tortfeasors acting in concert in its opinion. It is also the opinion of this court that under either a theory of several liability or joint and several liability, each participant in this matter is accountable for the entire loss. The trial court's factual determinations concerning the Ostlings' mutual support of each other's fraudulent representations supported a finding that the Ostlings acted in concert, pursuant to a common plan, and creating an indivisible harm. This court has accepted those determinations. Therefore, it is this court's determination that each may be held accountable for the whole loss. In this matter, apportionment per the rule in *Smiley* was not applicable. There was no error in this regard.

### IVB. *Judgment of restitution in Melaia Ostling's criminal case*

The court accepts the position of appellees that the judgment against the appellant was not affected by the restitution order [1] that was entered against Melaia Ostling in an entirely different, criminal proceeding. Although the court accepts the appellant's argument that a party cannot recover twice for the same loss, it is apparent that appellant is entitled to claim partial satisfaction of this judgment for any amount paid on the same debt by Melaia Ostling. The order of restitution in the criminal proceeding simply does not affect this court's order. The trial court did not err in this regard.

### CONCLUSION

For the reasons stated above, the judgment of the bankruptcy court is AFFIRMED.

IT IS SO ORDERED.

---

1. The trial court's opinion and order stated that it was undisputed that Melaia Ostling had received a prison sentence of 20 months and that in that proceeding an order of restitution was entered against Melaia Ostling in the amount of $467,407.00.