# STATE OF MICHIGAN

# COURT OF APPEALS

---

THOMAS W. ELKINS,

      Plaintiff/Counter-Defendant-
      Appellant,

v

NANCY BENNER,

      Defendant/Counter-Plaintiff-
      Appellee.

UNPUBLISHED
October 10, 2017

Nos. 331701; 332664
Oakland Circuit Court
LC No. 2015-147391-CZ

---

THOMAS W. ELKINS,

      Plaintiff/Counter-Defendant-
      Appellant,

v

NANCY BENNER,

      Defendant/Counter-Plaintiff-
      Appellee,

and

C. WILLIAM GARRATT,

      Appellant.

No. 333114
Oakland Circuit Court
LC No. 2015-147391-CZ

---

Before: SAAD, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right several orders entered by the trial court in this action to hold defendant liable for an attorney referral fee in the amount of $165,000 that plaintiff alleges is owed by defendant's former husband, Brian Benner ("Benner"), a now disbarred attorney. In Docket No. 331701, plaintiff appeals the trial court's order granting defendant's motion for

-1-

summary disposition and denying plaintiff's motion to amend his complaint. In Docket Nos. 332664 and 333114, plaintiff appeals the trial court's orders granting defendant's motion for sanctions based on the trial court's determination that plaintiff's complaint was frivolous, and awarding defendant attorney fees of $18,344 and costs of $980.10. Plaintiff also appeals the trial court's order denying plaintiff's motion for sanctions in connection with defendant's dismissed counterclaim for slander of title. We affirm in part and reverse in part in Docket No. 331701, vacate the orders appealed in Docket Nos. 332664 and 333114, and remand for further proceedings.

Plaintiff, an attorney, alleges that defendant's former husband, Brian Benner, failed to pay a referral fee for a client that plaintiff referred to Benner. Plaintiff filed this lawsuit seeking to hold defendant liable for the referral fee under a theory that Benner misappropriated client funds, including funds for the attorney referral fee that Benner owed plaintiff, and that defendant acted in concert with Benner to defraud plaintiff and other creditors by transferring the misappropriated property to defendant, in part through a sham divorce and property settlement, and that defendant was unjustly enriched by Benner's misdeeds. In Count I of his complaint, plaintiff alleged that defendant was liable for the attorney referral fee that Benner agreed to pay because she acted as Benner's instrument or alter ego to commit fraud upon plaintiff. Plaintiff asked the court to impose a constructive trust on a marital home owned by Benner and defendant, which had been placed solely in defendant's name. In Count II, plaintiff alleged that Benner converted the client funds from which plaintiff was entitled to collect the attorney referral fee and that defendant was liable because she aided or abetted Benner in the conversion of plaintiff's property.

In addition to answering the complaint, defendant filed a counterclaim for slander of title based on plaintiff filing a notice of lis pendens for the marital home that defendant received from Benner, which defendant had listed for sale. The trial court discharged that notice, but defendant maintained that she was damaged by plaintiff's malicious filing of the notice, alleging the notice was intended to force her into negotiating the attorney referral fee claim with plaintiff.

Defendant filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that plaintiff failed to state a cognizable claim for liability under an alter-ego theory and that plaintiff could not establish any claim for conversion because plaintiff could not establish that Benner converted specific funds belonging to plaintiff. At most, defendant argued, plaintiff had a claim for breach of contract against Benner only. Defendant also argued that there was no evidence of a conspiracy between herself and Benner to defraud plaintiff or other creditors.

Plaintiff argued in response that defendant and Benner began to act in concert to defraud creditors in 2009, when they transferred title to their marital home to defendant alone and Benner began misappropriating client funds. Plaintiff submitted evidence showing that in September 2014, Benner was disbarred for misappropriating client funds, for which he was later criminally charged. Defendant filed for divorce from Benner on December 5, 2014. On that same date, the bank that held a mortgage on defendant and Benner's marital home filed a notice indicating that the 2004 mortgage on the home had been fully paid and discharged. A consent judgment of divorce was entered in February 2015, and defendant and Benner agreed to a property settlement that significantly favored defendant. Plaintiff argued that the divorce action was a sham, noting that defendant and Benner continued to reside together in the marital home afterward. Under the

property settlement agreement between defendant and Benner, the marital home was to be sold and the net proceeds awarded to defendant, free of any claims by Benner. Until it was sold, defendant and Benner each had the right to occupy the marital home. Defendant was also awarded all furnishings in the marital home, her personal property, all bank and financial accounts in her name, and a 21-foot boat and trailer. Benner received his personal property, a 2011 BMW, and any accounts in his name. The parties also agreed that defendant would receive 80 percent of proceeds due Benner for certain pending lawsuits in which Benner was the attorney of record. Additional proceeds were to be divided, with 70 percent going to defendant and 30 percent to Benner. Defendant assumed liability for her credit and charge accounts, and Benner was liable for all obligations in connection with B&B Properties, LLC, and his law practice, as well as credit cards in his name. In April 2015, Benner filed for Chapter 11 bankruptcy protection. Bankruptcy records show that several former clients pursued claims against Benner for misappropriating funds. In his bankruptcy case, Benner listed plaintiff's claim for the alleged $165,000 referral fee as an unsecured debt.

In addition to opposing defendant's motion for summary disposition under MCR 2.116(C)(8), plaintiff filed a motion to amend his complaint to add or clarify claims, including to specify that he was proceeding on claims for civil conspiracy, concert of action, and violation of the Uniform Fraudulent Transfer Act (UFTA), MCL 566.31 *et seq*. Because defendant had sold her home, plaintiff also sought to impose a constructive trust on the proceeds of the sale.

The trial court granted defendant's motion for summary disposition, ruling that plaintiff could not establish a claim for conversion regarding the money owed to him by Benner. The court also rejected plaintiff's theory that defendant could be liable for Benner's misdeeds as his alter ego. Accordingly, the trial court dismissed plaintiff's complaint in its entirety. In addition, the trial court denied plaintiff's motion to amend his complaint, ruling that any amendment would be futile. The trial court also dismissed defendant's counterclaim after defendant voluntarily agreed to dismiss it.

Afterward, the trial court granted defendant's motion for sanctions, agreeing that defendant was entitled to sanctions under MCR 2.114, MCR 2.625(A)(2), and MCL 600.2591 because plaintiff's complaint was frivolous. The trial court denied plaintiff's motion for sanctions in connection with defendant's counterclaim. Following an evidentiary hearing, the trial court awarded defendant sanctions of $18,344 for attorney fees and costs of $980.10.

## I. DOCKET NO. 331701

In Docket No. 331701, plaintiff argues that the trial court erred by granting defendant's motion for summary disposition and denying his motion to amend his complaint. This Court reviews a trial court's summary disposition decision de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court granted defendant's motion under MCR 2.116(C)(8), which tests the legal sufficiency of the plaintiff's complaint by the pleadings alone. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations in the complaint are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). Summary disposition should be granted only if the claims

are "so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id.* at 487.

A trial court's decision to grant or deny leave to amend a complaint is reviewed for an abuse of discretion. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004). "An abuse of discretion occurs when the decision [of the trial court] results in an outcome falling outside the principled range of outcomes." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 625; 750 NW2d 228 (2008) (alteration in original).

## A. THE ALTER-EGO RULE

Count I of plaintiff's complaint alleged that defendant acted as Benner's alter ego to misappropriate client funds and shield those funds from creditors, and therefore, defendant could be held personally liable for the attorney referral fee that Benner agreed to pay plaintiff. The trial court agreed with defendant that plaintiff failed to state a "claim for alter ego because there's no corporate entity involved." The court also refused to allow plaintiff to amend his complaint to further clarify this claim because "there is no such thing as alter ego, and you don't plead any specificity as to that anyways, as to the fraud you allege." We agree with the trial court that there is no basis for applying the alter-ego rule to allow the imposition of liability on defendant for Benner's alleged misdeeds.

The alter-ego rule is not itself a cause of action. *In re RCS Engineered Prod Co, Inc*, 102 F3d 223, 226 (CA 6, 1996). Instead, the theory, which is based on equity, allows a court to disregard a corporate entity in order to impose liability on a person for the corporation's misdeeds. *Id.*; *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996). *Black's Law Dictionary* (10th ed) defines "Alter ego" as "[a] corporation used by an individual or a subservient corporation in conducting personal business, the result being that a court may impose liability on the individual or subservient corporation by piercing the corporate veil when someone dealing with the corporation is the victim of fraud, illegality, or injustice." See also *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 715; 762 NW2d 529 (2008). Plaintiff is not seeking to pierce any corporate veil in this case.

Plaintiff, however, argues that the alter-ego rule may be extended to individuals under circumstances similar to this case, relying on bankruptcy cases in which courts have held one spouse liable for the other spouse's debts. Bankruptcy courts have recognized that a spouse may be liable for the other spouse's debts, or be required to turn over assets, if the spouse had some other relationship to the responsible spouse, apart from the spousal relationship. See *In re Ostling*, 266 BR 661, 665 (Bankr ED Mich, 2001), aff'd 284 BR 614 (ED Mich, 2002) (a spousal relationship alone is insufficient to impute one spouse's fraud to the other spouse; in order to hold a spouse liable for his or her spouse's acts, there must be some legal relationship in addition to the marriage); *In re Smith*, 98 BR 423 (Bankr CD Ill, 1989) (husband who ran car dealership was wife's agent for purposes of determining if the wife's debts were excepted from discharge in

bankruptcy).[1]  In this case, however, plaintiff was not seeking to hold defendant liable for Benner's alleged debt on the basis of a legal relationship between defendant and Benner apart from their spousal relationship.  Therefore, the alter-ego rule would not apply to the undisputed facts of this case.

The trial court also did not err in denying plaintiff's motion to amend his complaint to further clarify his cause of action regarding the alter-ego rule.  When a trial court grants summary disposition to a defendant under MCR 2.116(C)(8), it must give the plaintiff an opportunity to amend his complaint under MCR 2.118, unless amendment would not be justified or if it would be futile.  *Yudashkin v Holden*, 247 Mich App 642, 651; 637 NW2d 257 (2001); MCR 2.116(I)(5).  Under MCR 2.118(A)(2), a trial court should freely grant leave to amend "when justice so requires" because

> [a] motion to amend ordinarily should be granted in the absence of any apparent or declared reason, such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *Ben P Fyke & Sons, Inc v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973).  If a trial court denies a motion to amend, it should specifically state on the record the reasons for its decision. *Id*. at 656-657. [*Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 9-10; 614 NW2d 169 (2000).]

An amendment will be considered futile if it merely restates allegations already made or adds new allegations that fail to state a claim. *Yudashkin*, 247 Mich App at 651.

In this case, plaintiff's proposed amended complaint merely sought to restate his allegations in support of applying the alter-ego rule, but without curing the deficiencies associated with that theory of relief.  Because plaintiff failed to establish a legal basis for applying the alter-ego rule under the facts of this case, the trial court did not err by denying plaintiff's request to amend this claim.

## B.  CONVERSION

Plaintiff also argues that the trial court erred in ruling that he failed to state a claim for conversion.  Plaintiff argued that he stated a claim for statutory conversion, MCL 600.2919a, because he had an intangible property right to the referral fee, which Benner converted, and defendant aided or abetted in that conversion.  Citing *Garras v Bekiares*, 315 Mich 141, 148-149; 23 NW2d 239 (1946), the trial court ruled that defendant was entitled to summary disposition under MCR 2.116(C)(8) "because there can be no conversion of money unless there

---

[1] In *In re Surls*, 240 BR 899 (Bankr WD Mo, 1999), the court reviewed whether a wife was liable for the debt of her husband and his corporation under an alter ego theory, but that case is distinguishable because it involved a corporate entity.  Plaintiff does not base his claim on Benner's professional corporation.

was an obligation on the part of the defendant to deliver specific money to the plaintiff." The court determined that plaintiff had not identified the conversion of any specific funds belonging to plaintiff, and that under the facts alleged by plaintiff, plaintiff's only remedy was a claim for breach of contract against Benner. We disagree.

Although plaintiff cited MCL 600.2919a, the parties and the trial court relied on case law involving common-law conversion. While MCL 600.2919a is rooted in the common-law form of conversion, statutory conversion is not the same as common-law conversion. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 361; 871 NW2d 136 (2015). "The tort of conversion is 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' " *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999), quoting *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). By contrast, statutory conversion under MCL 600.2919a(1)(a) provides that the tort is committed when another's "property" is stolen, embezzled, or converted for the converter's own use.

This Court has held that "[t]o support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care," and "must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Head*, 234 Mich App at 111-112 (citations omitted); see also *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004). That rule evolved from common-law conversion claims, *Garras*, 315 Mich at 148-149, and later applied to statutory conversion claims, *Head*, 234 Mich App at 111-112.

Plaintiff alleged that Benner owed him money in the form of a referral fee for a client that plaintiff referred to Benner. Plaintiff alleged that Benner represented that client and that plaintiff continued to consult both Benner and the client while the litigation was in progress. After the client settled her claim, Benner was paid the settlement funds, which he placed in his client trust account, but only a portion of the referral fee that plaintiff was due was actually paid to plaintiff. Based on the facts alleged in the complaint, there could indeed be a claim for conversion against Benner because (1) Benner had an obligation to return money to plaintiff, (2) the money was specific, i.e., it was an identifiable referral fee from settlement funds, and (3) there is nothing to indicate that plaintiff consented to a creditor-debtor relationship. *Id*. As to the third requirement, plaintiff alleged that there was an expectation that once Benner received the funds from the settlement, Benner would transfer plaintiff's portion; thus, there was no intended creditor-debtor relationship. See MRPC 1.15(b) (obligating attorneys to "promptly pay or deliver funds" once received to any third party entitled to those funds).

We further find persuasive the analysis in *Francis J Bernhardt III, PC v Needleman*, 705 A2d 875 (Pa Super, 1997), wherein the facts and law are almost identical. There, the plaintiff attorney brought an action against the defendant attorney to recover an unpaid referral fee under both breach-of-contract and conversion theories. *Id*. at 876. The Pennsylvania Superior Court noted that Pennsylvania Rules of Professional Conduct, Rule 1.15, required that a lawyer notify other individuals of the receipt of funds in which those individuals may have an interest and that the funds should be kept separate. *Id*. at 878. The court held that the defendant could be liable for conversion for not turning over a share of the settlement to the plaintiff for his referral fee, explaining:

The trial judge correctly stated that failure to pay a debt is not conversion. *Petroleum Marketing v. Metropolitan Petroleum Corp.*, 396 Pa. 48, 151 A.2d 616 (1959). Bernhardt, on the other hand, makes a persuasive argument that this was not a debt. Bernhardt argues that the settlement proceeds were property in which the client and both attorneys had an interest. Our research suggests that this is an issue of first impression. Because there is no authority on this issue, Bernhardt points to the Rules of Professional Conduct for the proposition that settlement proceeds are property in which both attorneys have an interest. Although the Rules are not designed to be a basis for civil liability, we find them instructive.

The comment to Rule 1.5 provides that "[a] division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm." The comment further states that a fee division "most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist." This language supports the contention that the referring attorney and the trial specialist are splitting a fee to which both have a separate and distinct property right. Indeed, the settlement proceeds or recovery is a *res* in which the trial attorney and the client have an interest. There can be no doubt that an attorney is liable to a client in conversion for failing to properly dispose of client funds. *Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel*, 832 F.Supp. 922, 931-32 (E.D.Pa.1993). A client and a contingent fee attorney contract for specified percentage interests in property—the proceeds of the lawsuit. Similarly, the contract for the referral fee is a contract for a division of work in exchange for a division of property—the attorneys' interest in those proceeds. Accordingly, this court holds that, once a fee has been received, the referral fee can be the subject of a conversion. Furthermore, the attorney's law firm can be vicariously liable for conversion. *Id*. at 932. Therefore, Needleman's failure to account to Bernhardt for his share of the proceeds was a conversion and we reverse the trial court's holding on this issue. [*Bernhardt*, 705 A2d at 878-879.]

MRPC 1.15(b) similarly places a duty on lawyers in Michigan to notify those with an interest in certain funds when a lawyer is in receipt of such funds. The rule states:

(b) A lawyer shall:

(1) promptly notify the client or third person when funds or property in which a client or third person has an interest is received;

(2) preserve complete records of such account funds and other property for a period of five years after termination of the representation; and

(3) promptly pay or deliver any funds or other property that the client or third person is entitled to receive, except as stated in this rule or otherwise permitted by law or by agreement with the client or third person, and, upon request by the client or third person, promptly render a full accounting regarding such property.

(c) When two or more persons (one of whom may be the lawyer) claim interest in the property, it shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

(d) A lawyer shall hold property of clients or third persons in connection with a representation separate from the lawyer's own property. All client or third person funds shall be deposited in an IOLTA or non-IOLTA account. Other property shall be identified as such and appropriately safeguarded.

Because MRPC 1.15(b) requires an attorney to separately hold funds received as settlement for a client's claim, this would satisfy any requirement that conversion of money must involve separately identified or distinct funds. Furthermore, MRPC 1.5(e) recognizes that attorneys may collect on a referral by sharing in a contingency fee agreement.

Because Michigan's rules of professional conduct mirror those relied on in *Bernhardt*, and we agree with the reasoning in *Bernhardt* that an action for conversion can be brought where one attorney fails to turn over another attorney's referral fee, we hold that the trial court erred in dismissing plaintiff's count for conversion for the reason that plaintiff failed to establish an obligation by Benner to deliver specific money to plaintiff. This conclusion is consistent with this Court's decision in *Citizens Ins Co of America v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 576; 444 NW2d 210 (1989), in which this Court recognized that an action for conversion can exist where an individual cashes a check and retains the full amount while only entitled to a portion of it. Plaintiff here alleged that Benner received the settlement funds from the insurer involved in the underlying litigation and kept the proceeds while only entitled to a portion of them.

However, merely establishing that Benner can be liable for converting the alleged referral fee does not end the inquiry. Because plaintiff brought this action against defendant, not Benner, plaintiff must also show a legal basis for imposing liability on defendant for Benner's alleged conversion of the referral fee. MCL 600.2919a(1)(b) provides that one "receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property" can be liable "when the person . . . receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted." This statute allows liability to be imposed on a party who knowingly receives converted property, or knowingly aids in the concealment of converted property.

Plaintiff alleged that defendant conspired with Benner to participate in a scheme to hide or transfer misappropriated assets beyond the reach of Benner's creditors, like plaintiff. A civil conspiracy theory is not actionable by itself, but must involve an underlying tort. *Urbain v Beierling*, 301 Mich App 114, 132; 835 NW2d 455 (2013); *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005). "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org for Patients & Providers*, 257 Mich App at 384. Plaintiff alleged sufficient facts that defendant knew and participated in a scheme to convert client funds for personal use. Defendant received title to the marital home in 2009. She

-8-

worked with Benner at his law firm, attorney disciplinary proceedings were initiated against Benner, and he voluntarily resigned his membership with the State Bar of Michigan in September 2014. In December 2014, the mortgage for the marital home was paid off, and defendant filed for an uncontested divorce, which was settled shortly thereafter, with Benner agreeing to allow the majority of assets to go to defendant, including the marital home and all of its furnishings, as well as a boat. Defendant was also awarded a majority of the monies that was owed to Benner for his work on other pending cases that he had handled. Benner then filed for bankruptcy, claiming few assets.

In sum, plaintiff's complaint sufficiently alleged a claim for conversion of plaintiff's referral fee by Benner, and defendant may be liable for that conversion if she knowingly received converted property, or knowingly aided in the concealment of the converted property. Considering plaintiff's allegations of a conspiracy between defendant and Benner, and the circumstances involving the transfer of assets from Benner to defendant, the challenged legitimacy of defendant and Benner's divorce, and the timing of the various transactions between those parties, we cannot conclude that plaintiff's claim of a conspiracy between defendant and Benner to shield Benner's assets from creditors, including plaintiff, is so clearly unenforceable as a matter of law that no factual development could justify recovery. Accordingly, we reverse the trial court's decision granting defendant's motion for summary disposition with respect to plaintiff's conversion claim.

## C. THE UNIFORM FRAUDULENT TRANSFER ACT

The trial court also denied plaintiff's motion to amend his complaint to add a claim under the UFTA. Plaintiff's proposed amended complaint alleged that defendant and Benner conspired to use their divorce property settlement to facilitate the transfer of property from Benner to defendant to shield the property from Benner's creditors, including plaintiff. The trial court erred in ruling that plaintiff was precluded from challenging the property settlement as an improper transfer of marital assets under the UFTA because such a challenge amounted to an improper collateral attack on the divorce judgment. In *Estes v Titus*, 481 Mich 573, 576; 751 NW2d 493 (2008), our Supreme Court held that the UFTA "applies to a transfer of property made pursuant to a property settlement agreement incorporated in a divorce judgment" and that such a claim is not an impermissible attack on a divorce judgment. The Court stated:

> The UFTA specifically provides for avoiding a fraudulent transfer or attaching a particular fraudulently transferred asset. Relief under the UFTA determines only the creditor's right to fraudulently transferred property. The court in a UFTA action would transfer directly to the creditor any property interest that would have been awarded to the debtor in the divorce action but for the parties' fraud. Hence, the relief granted would not affect the validity of the divorce judgment or provisions of the judgment such as child custody. [*Id.* at 586-587 (footnotes omitted).]

Therefore, the trial court erred when it denied plaintiff's motion based on this legal premise.

The Court in *Estes*, 481 Mich at 580-582, explained that property that is transferred pursuant to a divorce judgment is considered to be held by the parties as tenants by the entirety,

-9-

which is not property that can be reached under the UFTA. The UFTA allows creditors to reach transfers of assets that are fraudulent and the term "asset" means "property of the debtor." MCL 566.31(b). An "asset" does not include "[a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only 1 tenant." MCL 566.31(b)(*iii*). Therefore, property held as tenants by the entirety is exempt from claims of creditors of only one spouse and is not an "asset" that may be subject to the UFTA. See MCL 557.151.

Plaintiff's theory was that defendant and Benner acted in concert to obtain a divorce in order to transfer property to defendant and shield it from Benner's creditors. While defendant argues that the property transferred to her through the divorce is property held as tenants by the entirety, and therefore, cannot be the subject of any claim under the UFTA, the status of the property was not addressed or decided below and cannot be ascertained on the basis of the current record. Accordingly, it is not apparent that any amendment to add a claim under the UFTA would be clearly futile. The trial court did not identify any basis other than futility to deny plaintiff's motion to amend. Because the record fails to demonstrate that a claim under the UFTA would be futile, the trial court abused its discretion in denying plaintiff's motion to amend to add a claim under the UFTA. Accordingly, we reverse the trial court's order denying plaintiff's motion to amend his complaint to add a claim under the UFTA.

### III. DOCKET NOS. 332664 AND 333114

In Docket Nos. 332664 and 333114, plaintiff challenges the trial court's orders awarding defendant sanctions under MCR 2.114, MCR 2.625(A)(2), and MCL 600.2591, and denying plaintiff's motion for sanctions in connection with the dismissal of defendant's counterclaim.

In light of our decisions to reverse both the trial court's dismissal of plaintiff's conversion claim and its denial of plaintiff's motion to amend his complaint to add a claim under the UFTA, we vacate the trial court's award of sanctions to defendant because those claims cannot be considered frivolous, and defendant is no longer a prevailing party entitled to sanctions. *In re Attorney Fees & Costs*, 233 Mich App 694, 701-702; 593 NW2d 589 (1999); *Davids v Davis*, 179 Mich App 72, 89; 445 NW2d 460 (1989).

Plaintiff also argues that the trial court erred in denying his motion for sanctions in connection with defendant's counterclaim for slander of title, which was based on plaintiff's filing of a notice of lis pendens. Plaintiff argues that defendant's counterclaim was frivolous because defendant did not allege falsity or special damages, see *Fed Nat'l Mtg Ass'n v Lagoons Forest Condo Ass'n*, 305 Mich App 258, 269-270; 852 NW2d 217 (2014), and because defendant had no evidence to show that plaintiff filed the notice of lis pendens with malice. In denying plaintiff's motion, the trial court stated that it could not award sanctions to plaintiff because there was never a determination of the merits of the counterclaim, and also that it "was well grounded in fact and warranted by existing law." The court also rejected plaintiff's arguments that the counterclaim "was invalid as a matter of law because Defendant could not show falsity, malice or special damages," reasoning that "these arguments go to the merits of the claim, not the frivolous nature of the counterclaim." The trial court erred in its analysis of plaintiff's motion. First, it was not inappropriate for plaintiff to address the merits of defendant's counterclaim in arguing that it was frivolous because a claim can be frivolous if the filing party

-10-

"had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," or "[t]he party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a). Second, the trial court dismissed defendant's counterclaim without prejudice after dismissing all of plaintiff's claims, and it is apparent that the trial court's finding that defendant's counterclaim for slander of title was not frivolous was influenced by its determination that plaintiff's claims against defendant lacked factual and legal support. Thus, our decisions to reverse both the trial court's dismissal of plaintiff's conversion claim and its refusal to allow plaintiff to add a claim under the UFTA undermines the foundation for the trial court's decision denying plaintiff's motion for sanctions. Moreover, because the counterclaim was dismissed without prejudice, it is possible that defendant will seek reinstatement of her counterclaim on remand. Under the circumstances, we also vacate the trial court's order denying plaintiff's motion for sanctions, without prejudice to plaintiff raising this issue again in an appropriate motion on remand, in which case the trial court shall reconsider its ruling under proper legal standards.

We affirm in part and reverse in part the trial court's order granting defendant's motion for summary disposition and denying plaintiff's motion to amend her complaint, vacate the trial court's orders granting defendant's motion for sanctions and denying plaintiff's motion for sanctions, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron