# STATE OF MICHIGAN

# COURT OF APPEALS

---

MAUREEN FITZGERALD,

      Plaintiff/Counter-Defendant-
      Appellee,

v

DONALD E. OEHMKE and SHANNON L.
OEHMKE,

      Defendants/Counter-Plaintiffs-
      Appellants.

UNPUBLISHED
April 24, 2018

No. 333116
Kalamazoo Circuit Court
LC No. 2014-000343-CK

---

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

This dispute arises from an unpaid personal loan and the lender's actions against the debtors when they failed to pay. The trial court summarily disposed of the repayment claim in the lender's favor and subsequently found no cause of action in relation to the debtors' counterclaims. We agree with the debtors that the trial court improperly reformed the interest rate on the loan. In that regard, we vacate the trial court's order and remand for reinstatement of the agreed upon rate of 8% simple interest. This relief does not give the debtors their desired outcome of avoiding repayment of any interest as we affirm the trial court's rejection of their bid to add a usury defense and affirm in all other respects.

## I. BACKGROUND

Donald Oehmke spent four years in federal prison for a securities fraud conviction. While he was in prison, Maureen Fitzgerald loaned Donald and his wife Shannon $20,000. Donald drafted the note, which included an interest rate of 8%. The Oehmkes promised to pay the loan in full upon Donald's January 2012 release, but Fitzgerald orally agreed to extend the deadline until June. The Oehmkes did not meet this deadline and never made any payment toward the debt. Fitzgerald testified that she contacted the Oehmkes repeatedly and eventually adopted an alias to contact Donald. Fitzgerald also contacted Donald's relatives and various law enforcement agencies, including the attorney general's office and the FBI, about the Oehmkes' failure to repay the note. When these attempts were unsuccessful, Fitzgerald filed a breach of contract action against the Oehmkes in June 2014.

-1-

Upon his release, Donald allegedly made attempts to find new employment. His options were limited because he was subject to parole supervision until January 2014. With good behavior, however, the supervision would cease in January 2013, permitting him to travel for work. Donald claimed that contingent on this earlier release date, Medusa International Corp offered to hire him as a business consultant with a monthly salary of $10,000. Medusa allegedly withdrew the offer after Fitzgerald made claims against him to federal agencies. In September 2014, the Oehmkes countersued Fitzgerald for tortious interference with this prospective business relationship. A month later, they amended their complaint to clarify their tortious interference claim (Count I) and to include additional counterclaims: that Fitzgerald made fraudulent representations regarding Donald (Count IV) and that she libeled and slandered him (Count V). The Oehmkes charged Fitzgerald with extortion by offering to retract her reports if Donald repaid the outstanding debt (Count III). They also claimed that Fitzgerald wrongfully accessed Donald's bank account and altered his personal profile, which amounted to identity theft, invasion of privacy, and hacking (Count II).

In February 2015, the Oehmkes sought leave to amend their answer to Fitzgerald's breach of contract complaint to add the affirmative defense of usury. They claimed that Fitzgerald attempted to collect an interest rate (8% simple interest) that was unlawful under MCL 438.31. At the hearing on the motion to amend, the trial court elected to reform the note as suggested by Fitzgerald to include a lawful interest rate of 7%. The court then denied the Oehmkes' request to amend as the defense no longer applied. Shortly thereafter, the trial court granted Fitzgerald's motion for summary disposition on her contract claim, ruling as a matter of law that the Oehmkes had breached the note by failing to repay their debt.

The court held a bench trial on the Oehmkes' counterclaims in January 2016. After the Oehmkes rested their case, the court granted Fitzgerald's motion for a directed verdict as to the tortious interference, fraud, and extortion counts. The court then found in favor of Fitzgerald on the remaining claims. After the trial, the court entered a final judgment, awarding Fitzgerald $41,318.88 in attorney fees and costs pursuant to MCR 2.405. The court also awarded Fitzgerald $26,730.04, the principle and interest due on the loan, but mistakenly labeled this sum as a sanction.

The Oehmkes now appeal.

## II. THE EQUITABLE POWER TO REFORM THE NOTE

We first address the Oehmkes' claim that the trial court did not have the authority to reform the note to lower the interest rate because (1) Fitzgerald did not plead reformation as a claim or defense, (2) the court had no authority to correct an error of law, and (3) there was no evidence to support reforming the note. We review de novo the interpretation and application of the court rules, *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012), as well as whether the trial court properly applied equity to the facts of the case. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013). Ultimately, although the court had the authority to reform the note, we agree that the evidence did not support the summary reformation of the instrument.

In her response to the Oehmkes' motion for leave to amend their answer to include the defense of usury, Fitzgerald invited the trial court to instead reform the note to include a legal interest rate, contending that the note did not express the parties' true intent. This request was in effect a motion for leave to amend the complaint to add a reformation count coupled with a motion for summary disposition of that claim under MCR 2.116(C)(10). By offering this alternate basis for relief in her responsive brief, Fitzgerald placed the Oehmkes on notice that she intended to ask the court to allow her to amend her complaint should the court decide to allow the Oehmkes to assert a usury defense. Accordingly, the Oehmkes had adequate notice before the hearing to respond to this new position. See *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317-318; 503 NW2d 758 (1993) (discussing the role of notice pleading under Michigan's court rules).

At the hearing on the Oehmkes' motion for leave to add the defense of usury, Fitzgerald again asserted that she was entitled to reformation of the note. This was, in effect, an oral motion for leave to amend to include a reformation count and for immediate summary disposition. A motion must ordinarily "be in writing," but a party may make a motion "during a hearing or trial." MCR 2.119(A)(1)(a). Therefore, the trial court could properly consider whether to grant Fitzgerald's requested relief. The court did so and then determined that the record evidence supported that the parties were mutually mistaken about whether the interest rate selected for the note was legal under Michigan law. The court granted summary disposition in Fitzgerald's favor by reforming the note to comport with the parties' purported agreement to provide a legal interest rate.

The trial court could in theory use equity to reform the note to conform to the true intent of the parties. "Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake [mutual or unilateral], accident, or surprise." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372, 379-380; 761 NW2d 353 (2008). Although the Oehmkes correctly note that courts "will seldom, if ever" correct a mistake regarding "the legal effect of the contract actually made," courts may nevertheless reform an instrument when "there are other equitable legal features calling for the interposition of the court." *Id.* at 380 (quotation marks and citation omitted).

However, this Court has refused to reform an instrument to include a legal interest rate to avoid encouraging unscrupulous lending practices:

> If we permitted lenders to reform contracts with usurious interest rates, an unscrupulous lender would not be deterred from charging a usurious interest rate because if the usurious interest rate was not discovered, the lender could retain the ill-gotten interest, and if the usurious interest rate was discovered, the lender could simply seek reformation of the contract. [*Olsen v Porter*, 213 Mich App 25, 29; 539 NW2d 523 (1995).]

In this case, the lender did not draft the promissory note; the *borrowers* did. Thus, this case may involve unscrupulous *borrowers* who were seeking to avoid repaying part of their debt. In *Olsen*, this Court concluded that the trial court erred by reforming the instrument because none of the parties contended "that the land contract did not express their true intent" and courts

"will not reform a contract if the instrument is drawn as intended." *Id.* While a court sitting in equity has the power to reform an instrument to reflect the true intent of the parties, see *Conn Fire Ins Co v Monroe Circuit Court*, 77 Mich 231, 237; 43 NW 871 (1889), there must be evidence of the mistake and the parties' actual intentions. Such evidence was not present here.

In order to merit summary disposition on her newly raised reformation claim, Fitzgerald had to prove mutual or unilateral mistake with the requisite showing of fraud by clear and convincing evidence. See *Johnson Family Ltd Partnership*, 281 Mich App at 379. She also had the initial burden under MCR 2.116(C)(10) to establish that the undisputed evidence showed that she was entitled to relief. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369-370; 775 NW2d 618 (2009).

Fitzgerald argued that the promissory note showed on its face that the parties intended the agreement to have a legal interest rate. Specifically, Fitzgerald argued, and the court agreed, that the statement that the note was governed by Michigan law demonstrated that the parties intended to include a legal interest rate. That statement does not establish that the parties intended the note to include a legal interest rate; it was merely a choice of law provision indicating that the parties intended to have Michigan law apply in the event of a dispute. See, e.g., *Chrysler Corp v Skyline Indus Servs, Inc*, 448 Mich 113, 132; 528 NW2d 698 (1995). There was no other evidence tending to show that Fitzgerald believed that the 8% interest rate was legal or that she did not actually intend to agree to the illegal interest rate. There also was no evidence tending to show the Oehmkes' understanding of the interest rate. Because there was no evidence which if left unrebutted showed that Fitzgerald was entitled to equitable relief as a matter of law, the trial court erred when it summarily reformed the note to include a legal interest rate of 7%. Accordingly, we vacate the trial court's order reforming the note and remand for reinstatement of the original contract, including its provision of 8% interest.

### III. AMENDED DEFENSE

The Oehmkes next argue that the trial court erred when it denied their motion for leave to amend their defenses to include usury. If granted, the Oehmkes could challenge the newly restored 8% interest rate as usurious and potentially avoid paying any interest at all. Under the court rules, trial courts have discretion to allow a party to amend his pleadings to state a new claim or defense when justice so requires. *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 658-659; 213 NW2d 134 (1973). The trial court did not abuse its discretion in denying the Oehmkes' motion. As such, the Oehmkes are now duty bound to repay their debt with 8% interest.

Michigan law provides that the parties to an agreement may "stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum." MCL 438.31. A lender "who enters into any contract or agreement" that charges an interest rate in "excess of that allowed" under MCL 438.31 "is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower shall be entitled to recover his attorney fees and court costs" from the lender. MCL 438.32. Usury is an affirmative defense that "must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118," MCR 2.111(F)(3), or it is waived. MCR 2.111(F)(2); *Shaw Investment Co v Rollert*, 159 Mich App 575, 580; 407 NW2d 40 (1987).

The Oehmkes did not list usury as a defense in their answer, let alone "state the facts constituting" the defense "[u]nder a separate and distinct heading." MCR 2.111(F)(3). By failing to properly raise their usury defense, the Oehmkes waived it. However, the Oehmkes could cure their failure to properly assert the usury defense by seeking leave to amend the answer, and the trial court had the general obligation to grant leave: "It is a fundamental rule of civil procedure in this state that leave to amend pleadings should be given freely." *Stanke*, 200 Mich App at 321, citing MCR 2.118(A)(2) and *Ben Fyke & Sons*, 390 Mich at 656. A trial court should deny a motion for leave to amend only for particularized reasons, such as "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility." *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) (quotation marks and citation omitted; brackets in original).

Here, the trial court exercised its equitable power to reform the note to include a legal interest rate and denied the Oehmkes leave to amend on the ground that the usury defense was no longer applicable, i.e., because amendment would be futile. As noted, the court abused its discretion by reforming the interest rate in the note where there was no evidence that the parties did not intend to agree to an illegal 8% interest rate. As we have reinstated the original contract, it is no longer true that the usury defense is inapplicable. However, we affirm the denial of the Oehmkes' motion to add a usury defense on other grounds: the Oehmkes unduly delayed in seeking amendment, there is evidence the Oehmkes acted in bad faith, and the late amendment would have prejudiced Fitzgerald.

At the hearing on the Oehmkes' motion for leave to amend, Fitzgerald suggested that the Oehmkes knew or should have known that the note was usurious all along. After all, Donald personally drafted the note and he did so in order to induce Fitzgerald to lend him more money.[1] The Oehmkes did not mention usury at the time Donald drafted the note. They did not raise the usury defense after Fitzgerald sued them or when they countersued for more than $200,000. During discovery, the Oehmkes finally contested the interest rate but only asserted that it should be simple rather than compound interest. Fitzgerald spent more than $5,000 during discovery on this issue only to have the Oehmkes later claim that the interest rate was illegal and therefore uncollectible. Fitzgerald asked the court to deny leave on the grounds that the Oehmkes could have and should have asserted the defense earlier and that their failure to do so prejudiced her.

The Oehmkes responded that the amendment would not prejudice Fitzgerald because she could still pursue the principal amount of the note. The Oehmkes denied any bad faith, asserting that there was no evidence that they knew an 8% rate was usurious when Donald drafted the note. And if the parties were mistaken that 8% interest was legal, the Oehmkes asserted that the proper procedure would be for Fitzgerald to amend her complaint to state a claim for reformation. When the trial court reached a compromise and reformed the contract to include a nonusurious interest rate, the Oehmkes back pedaled, claiming there was no evidence of mistake

---

[1] The challenged note is an actually an amended document and extended additional funds to the Oehmkes.

so reformation was not permitted. The Oehmkes' conduct in drafting the note, accompanied by their ever changing position before the trial court, suggest that the Oehmkes intended from the start not to repay their loan. Even the trial court recognized the Oehmkes' attempts to "shelter" themselves from Fitzgerald's collection actions. Their belated reliance on usury laws to avoid part of the debt suggests bad faith.

Moreover, the delay in presenting the usury defense severely prejudiced Fitzgerald's ability to effectively and efficiently pursue her claims. It is undisputed that the Oehmkes drafted the promissory note and selected the interest rate at issue. The Oehmkes knew or should have known that the interest rate was usurious before they presented the note to Fitzgerald. If the Oehmkes included a usurious interest rate in order to set up a defense to future collection attempts or to increase the costs of collection, Fitzgerald could establish a claim for fraud. See *Waldorf v Zinberg*, 106 Mich App 159, 167-168; 307 NW2d 749 (1981). She might also be able to state a claim for equitable reformation on the basis of mistake accompanied by fraud. See *Johnson Family Ltd Partnership*, 281 Mich App at 379-380. In both cases, Fitzgerald might be able to show that she was entitled to reformation of the note or to damages equal to the losses caused by the fraud, which would be the lost interest. *Waldorf*, 106 Mich App at 167-168; see also *Abeloff v Ohio Finance Co*, 313 Mich 568, 578-579; 21 NW2d 856 (1946) (holding that a court sitting in equity may require a borrower to pay interest on a usurious note as a condition precedent to the grant of equitable relief).

Instead, the Oehmkes failed to assert usury as a defense in their answer, in their countercomplaint, or in their first amended countercomplaint. Indeed, they did not assert the usury defense until Fitzgerald filed her motion for summary disposition, which was after she incurred months of litigation expenses. By failing to earlier assert the defense, the Oehmkes limited Fitzgerald's ability to assert potential fraud claims. The late addition of the usury defense would require additional discovery and the investment of additional attorney time and fees to develop the fraud claim. The parties' discovery had already progressed for months and involved disputes that had to be resolved by the court. On this record, the court could have found that the Oehmkes' unreasonable failure to earlier assert the defense prejudiced Fitzgerald or amounted to a dilatory tactic designed to increase the strain and expense of the litigation. *Weymers*, 454 Mich at 658.

Ultimately, the trial court properly denied the Oehmkes' motion to amend, albeit for the wrong reason. The Oehmkes are therefore not entitled to return to the trial court to pursue a defense of usury against Fitzgerald's collection action. The Oehmkes now find themselves in a position where they must repay their debt at the interest rate they personally selected.

IV. SUMMARY DISPOSITION

The Oehmkes next argue that the trial court should not have summarily resolved Fitzgerald's breach of contract claim because they had valid offsets against the damages due under the note. They also argue that Fitzgerald could have mitigated her losses by not interfering with Oehmkes' business relationship with Medusa.

As Fitzgerald correctly notes, the Oehmkes cite no authority for the proposition that a trial court must withhold judgment after a properly granted motion for summary disposition until

after trial on the opposing party's counterclaims. They also did not offer any meaningful analysis of their claim that Fitzgerald failed to mitigate her losses. As such, the Oehmkes have abandoned those claims. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

A trial court may grant summary disposition under MCR 2.116(C)(10) when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." There was no dispute that the Oehmkes borrowed money and executed the promissory note. There was also no dispute that they had not repaid any portion of the note. Consequently, the trial court correctly determined that Fitzgerald was entitled to judgment as a matter of law on her breach of contract claim. Additionally, although the summary disposition order provided that "[j]udgment hereby enters in favor" of Fitzgerald for $25,396.71, the court did not enter a final judgment in Fitzgerald's favor on her breach of contract claim until after the trial. By that time, it had dismissed or found in favor of Fitzgerald on each of the Oehmkes' counterclaims. As such, the Oehmkes were not entitled to any offsets.

## V. CLAIMS INVOLVING DISCOVERY, EXPERT WITNESS, AND NEW TRIAL

The Oehmkes also assert various claims of error centered on their assertion that Fitzgerald lied when she testified that she did not apply for credit in Donald's name in order to cause a violation of the conditions of his supervised release. They claim that the trial court should have stayed or reopened discovery to allow them to obtain the information discovered by police officers investigating their claims of identity theft. They also claim that the trial court abused its discretion when it refused to allow them to call a police expert on handwriting to testify that Fitzgerald may have filled out a credit application in Donald's name. Finally, they claim that the court abused its discretion when it denied their motion for a new trial under MCR 2.611(A) on the ground that Fitzgerald prevailed at trial only by perjuring herself.

Where a party's rights cannot be determined until an issue raised in another action is resolved, it may be appropriate to stay a second action pending resolution of the first. See *Fast Air, Inc v Knight*, 235 Mich App 541, 548; 599 NW2d 489 (1999). In this case, however, the Oehmkes had access to the same documentation that the police used to start their investigation. Indeed, the Oehmkes provided the evidence to the police. The Oehmkes could have personally developed the evidence in support of their civil action simultaneously with the police. They could have requested discovery of additional information from the involved banks, just as the police did. The record belies the Oehmkes' assertion that they had no choice but to await the conclusion of the police investigation, requiring a stay of the proceedings or the reopening of discovery on the eve of trial. See *Mich Citizens for Water Conservation v Nestlé Waters North America Inc*, 269 Mich App 25, 51-52; 709 NW2d 174 (2005) (opinion by SMOLENSKI, J.), aff'd in relevant part 479 Mich 280 (2007) (holding that a court may properly refuse to reopen the proofs in the interests of finality and where the opposing party would be surprised or disadvantaged by the reopening).

We further discern no error in the court's preclusion of the handwriting expert who evaluated the credit application during the police investigation. The trial court had the authority to preclude this testimony on the ground that the Oehmkes failed to earlier disclose their intent to call him. See MCR 2.313(B)(2).

Preclusion is a drastic sanction, and a trial court should consider the totality of the circumstances before precluding a witness from testifying. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 164-165; 792 NW2d 749 (2010). One factor weighing against preclusion is a party's inadvertent failure to disclose the witness. See *id*. at 165; *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990). Here, the Oehmkes could have timely secured their own handwriting expert without delaying the proceedings.

Prejudice to the other party is a factor weighing in favor of preclusion. See *Duray Dev*, 288 Mich App at 165. As noted by the trial court, the Oehmkes should have presented the information that they planned to provide to a handwriting analysis expert, asked for an adjournment of the trial, and allowed Fitzgerald the opportunity to procure an outside expert to review the documents herself so that the court could fully explore the matter at trial. By withholding the necessary information, the Oehmkes prevented Fitzgerald from examining the issue and forced the court to try and "sort through" the material at trial. The Oehmkes point to a notation in the records of Fitzgerald's attorney that he conducted research on the admission of handwriting expert opinions as evidence that their late disclosure of their witness did not really prejudice their opponent. Research into the admissibility of a certain type of evidence, however, is a far cry from being able to examine the actual evidence to be presented. Such research would not have removed the prejudice caused by the Oehmkes' late disclosure. Moreover, this research did not establish that Fitzgerald had "actual notice" that the Oehmkes intended to call the expert who analyzed the handwriting samples during the police investigation, it only established that the attorney believed the issue might arise as the Oehmkes had accused Fitzgerald of identity theft. See *id*. (holding that "actual notice to the defendant of the witness" is a factor to consider before precluding a witness's testimony).

Even were we to conclude that the trial court abused its discretion in precluding the subject testimony, that decision would not warrant relief unless the failure to grant a new trial appeared to be "inconsistent with substantial justice." MCR 2.613(A). To meet that criteria, the Oehmkes must show that the error prejudiced their trial. See *Henson v Veteran's Cab Co of Flint*, 384 Mich 486, 493-494; 185 NW2d 383 (1971) (construing the predecessor court rule to MCR 2.613(A)). Here, the trial court found that, even if the Oehmkes had established a link between Fitzgerald and the activities that they claimed amounted to identity theft, hacking, or invasion of privacy, the Oehmkes nevertheless failed to establish damages caused by these acts, and found in Fitzgerald's favor on that basis as well. The testimony of the proposed expert witness had no bearing on the Oehmkes' damages. Accordingly, even if the witness were allowed to testify and established that Fitzgerald applied for credit in Donald's name, the trial court would have found no cause of action for want of damages. Any error in this regard was harmless. MCR 2.613(A).

Contrary to the Oehmkes' contentions, they also were not entitled to a new trial based on evidence uncovered during the police investigation. Specifically, the Oehmkes argue that the police investigation established that Fitzgerald did in fact apply for credit in Donald's name. She therefore committed perjury at the trial on the Oehmkes' countercomplaint when she denied applying for credit. Eliciting perjured testimony at trial may be grounds for a new trial under MCR 2.611(A)(1). *Stallworth v Hazel*, 167 Mich App 345, 352-353; 421 NW2d 685 (1988). The only relief the Oehmkes would have been entitled to in this civil action, however, was a declaration that Fitzgerald engaged in identity theft. The Oehmkes did not request that relief at

the original trial or in their motion for a new trial. Rather, the Oehmkes sought a financial remedy for Fitzgerald's activities. Yet, the Oehmkes presented insufficient evidence to support their claim for damages. Accordingly, even if Fitzgerald perjured herself at trial and the Oehmkes had subsequently secured evidence establishing that perjury, a new trial would not lead to a favorable judgment. Again, any error was harmless. MCR 2.613(A); *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 682-683; 630 NW2d 356 (2001).

## VI. ATTORNEY FEES

The Oehmkes finally argue that the trial court erred in several respects when it awarded Fitzgerald attorney fees under MCR 2.405(D). We review de novo whether a trial court properly selected, interpreted, and applied the relevant court rules. *Brecht*, 297 Mich App at 736. We review for an abuse of discretion the trial court's decision to award sanctions under MCR 2.405(D), *J C Bldg Corp II v Parkhurst Homes, Inc*, 217 Mich App 421, 426; 552 NW2d 466 (1996), as well as the reasonableness of the award. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

As this Court has explained, although attorney fees are generally not recoverable, a trial court may award a party his or her attorney fees under MCR 2.405(D), which is often referred to as the offer of judgment rule:

> Under MCR 2.405, the offer of judgment rule, a party may serve on his or her opponent a written offer to stipulate the entry of a judgment. The purpose of the offer of judgment rule is to avoid protracted litigation and encourage settlement. If the offeree rejects the offer and the adjusted verdict is more favorable to the offeror than the average offer, the offeror may recover actual costs from the offeree. [*Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 297; 769 NW2d 234 (2009).]

The Oehmkes complain that Fitzgerald's motion for costs under MCR 2.405(D) should have been denied as untimely. A party must request his or her costs "within 28 days after the entry of the judgment" or within 28 days of an "order denying a timely motion" for a new trial, to set aside the judgment, or for rehearing or reconsideration. MCR 2.405(D)(6). In this case, both parties offered to stipulate to a judgment inclusive of all claims and counterclaims. Although the trial court granted summary disposition in Fitzgerald's favor on her breach of contract claim in May 2015, it did not complete the trial until January 2016, and did not enter the final judgment disposing of all the claims until March 2016. Because it was impossible for the court to determine whether the adjusted verdict was more favorable to Fitzgerald until after it entered judgment on all the claims involved in the offer of judgment, see MCR 2.405(D)(1), the relevant judgment for the purpose of sanctions was the judgment that disposed of all the remaining claims involved in the offer. The relevant judgment did not enter until March 2016. Consequently, Fitzgerald's request was timely under MCR 2.405(D)(6).

The Oehmkes also argue that the court erred by awarding Fitzgerald costs and attorney fees that were not "actual costs incurred in the prosecution or defense of the action." MCR 2.405(D)(1). Citing *Douglas v Allstate Ins Co*, 492 Mich 241, 267-268; 821 NW2d 472 (2012), the Oehmkes maintain that costs are not incurred unless there is an expectation that the party

providing the service will be compensated. Because there was no evidence that Fitzgerald actually paid her legal fees, the Oehmkes contend that there was no evidence that she actually incurred the fees. That Fitzgerald had not yet paid her attorney does not mean that her attorney did not do the work or was not entitled to payment. A lawyer has the right to compensation for his or her services and a client incurs a legal obligation to pay reasonable remuneration to his or her lawyer when the lawyer renders the service. See *Macomb Co Taxpayers Assoc v L'Anse Creuse Pub Schs*, 455 Mich 1, 11-12; 564 NW2d 457 (1997). Absent a binding legal agreement absolving the client of his or her obligation to pay, "[w]hether the attorney, for any reason, opts not to pursue compensation, has nothing to do with the fact that legal fees were incurred." *Id.* at 12. Fitzgerald's lawyer presented a detailed bill for professional services rendered in support of the motion for costs. There is no evidence that counsel absolved Fitzgerald of her duty to pay. Accordingly, the Oehmkes' challenge in unavailing.

The Oehmkes also state that Fitzgerald failed to assert that the fees she requested were reasonable and, for that reason, failed to meet her burden to prove reasonableness. The term "[a]ctual costs" is defined under MCR 2.405(A)(6) to mean "the costs and fees taxable in a civil action and a reasonable attorney fee." By requesting an award of attorney fees under that rule, Fitzgerald implicitly claimed that the requested fees were reasonable. Additionally, Fitzgerald's lawyer argued at the motion hearing that the fees were reasonable, and the billing summary that Fitzgerald submitted in support of her request was sufficiently detailed to meet her initial burden. The summary listed the initials of the lawyer who worked on the case, the date of the work, the total hours worked per date, the hourly rate for the lawyer, and a brief description of the work performed. The trial court had sufficient information to consider the reasonableness of the requested fees. See *Kernen v Homestead Dev Co*, 252 Mich App 689, 692; 653 NW2d 634 (2002) (providing that a trial court may decide the reasonableness of a request for attorney fees solely on the pleadings and documentation when the documentation provides a reasonable evidentiary basis to evaluate and decide the request).

Finally, the Oehmkes maintain that the court should have held an evidentiary hearing to determine the reasonableness of the fees after their objection. Although the Oehmkes asserted that the requested fees were unreasonable, they did not argue that the hourly rates charged were unreasonable. Instead, they asserted that Fitzgerald's lawyer "padded the bill in almost every situation." Similarly, at the motion hearing, the Oehmkes did not contest the reasonableness of the hourly rates, instead asserting that certain charges were "excessive" and that if Fitzgerald wanted to pursue those costs she would "have to have an evidentiary hearing on that." The court rejected that the charges were excessive; it offered that the billing summary "on the surface would appear to cover those expenses necessary, expenditures of time and/or money" incurred defending the counterclaims after the Oehmkes rejected the offer of judgment.

Because the Oehmkes did not contest the reasonableness of the hourly rates charged, the trial court did not need to hold an evidentiary hearing on the reasonableness of the rates. *Smith*, 481 Mich at 532 (stating that an evidentiary hearing is necessary when there is a factual dispute over the reasonableness of the hours billed or the hourly rate). Additionally, although the Oehmkes maintained that certain charges were excessive as to certain dates, the court had sufficient information to determine whether the number of hours expended were reasonable in light of the services provided. Considering the actual objections to the charges, the court did not abuse its discretion when it refused to hold a full blown evidentiary hearing to consider the

specific charges; it had sufficiently detailed information to assess the charges' validity and reasonableness. *Kernen*, 252 Mich App at 692. Accordingly, we discern no error requiring reversal of the attorney fee award.

We affirm in part, vacate in part, and remand for reinstatement of the contract with 8% interest. We do not retain jurisdiction. As neither party prevailed in full as required for recovery of appellate costs, neither may tax costs pursuant to MCR 7.219.


/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron